JUSTICE TIMPONE delivered the opinion of the Court.
**587 *963 In this case, the Court considers whether the State must prove actual harm to a child to convict a defendant under N.J.S.A. 2C:24-4(a), endangering the welfare of children. Because the trial court and Appellate Division correctly determined that a conviction under N.J.S.A. 2C:24-4(a) can be sustained by exposing children to a substantial risk of harm, we affirm their denial of defendant Danyell Fuqua's motion for a judgment of acquittal.
I.
We marshal these facts from the record.
In September 2011, the Middlesex County Prosecutor's Office opened a narcotics investigation into Tyrell Johnson that later swept in defendant Fuqua. Defendant checked into a Studio Motel 6 in late September 2011. That December, in conjunction with the ongoing investigation, a task force began surveillance of the Studio Motel 6. In the early morning hours of December 10, 2011, after obtaining a search warrant, officers entered room 205. There, the officers found defendant, Johnson, and six children between the ages of one and thirteen -- three were defendant's children, one was Johnson's child, and two were defendant's relatives. The small room had a kitchenette, two beds, and a bathroom. Upon their entry, officers smelled the lingering odor of raw and burnt marijuana.
On the kitchen table, officers found marijuana, a grinder containing marijuana residue, an open box of clear plastic bags, and a white, unlabeled pill bottle holding various, multicolored pills. Between the two beds, officers discovered a lockbox with key inserted containing several items of jewelry, three loose packets of heroin, a separate plastic orange bag holding 653 packets of heroin, and one large bag of cocaine. Below the rear wall window, officers found an exposed black plastic bag holding 201 packets of heroin and fourteen plastic bags containing cocaine. To the immediate left and right of the drug-laden black plastic bag were children's shoes and a "little puppy dog" toy. Officers also discovered **588 a digital scale covered in white cocaine residue on a nearby windowsill. In addition to the narcotics and related paraphernalia, officers came upon five cell phones, more than $2000 in cash located in a purse on the kitchen table, and around $1700 belonging to Johnson.
Johnson subsequently pled guilty to drug distribution charges, and a jury convicted defendant of endangering the welfare of children, contrary to N.J.S.A. 2C:24-4(a).
The trial court denied defendant's motion for a judgment of acquittal, finding that the State need not prove actual harm to children to convict under N.J.S.A. 2C:24-4(a). Rather, relying on ample appellate precedent, the court held that the State needed only prove, and did prove, that a child faced a "risk" of harm sufficient to convict under N.J.S.A. 2C:24-4(a).
The Appellate Division affirmed, holding that the phrase "causes harm" in N.J.S.A. 2C:24-4(a) refers not only to one who causes actual harm, but also to one who "unreasonably allows a substantial risk of harm." The panel concluded that the children here were in "imminent danger" and exposed to a "substantial risk of harm" given the small motel room, the number of children present, and the large quantity of accessible drugs to which they were exposed and which they could easily have ingested.
We granted certification. 230 N.J. 560, 170 A.3d 335 (2017). We also granted amicus *964 curiae status to the Attorney General of New Jersey.
II.
A.
Defendant urges us to reverse the Appellate Division's conclusion that exposing a child to a substantial risk of harm is sufficient to convict under N.J.S.A. 2C:24-4(a).
Defendant maintains that under N.J.S.A. 2C:24-4(a)'s plain language a conviction may be based only on evidence establishing **589 actual harm, and that the statute also includes the requisite elements for a finding of abuse or neglect under Title 9. Defendant proposes that N.J.S.A. 2C:24-4(a)'s reference to Title 9 is convoluted, resulting in the Appellate Division's erroneous conclusion that "risk of harm" equals "harm."
Defendant also raises fears that if the Appellate Division's holding is left undisturbed, prosecutors will retain unbridled discretion in choosing between a second-degree prosecution under N.J.S.A. 2C:24-4(a) and a fourth-degree prosecution under Title 9.
B.
The State stresses that we should affirm the Appellate Division's conclusion that a conviction under N.J.S.A. 2C:24-4(a) can be sustained by proving a risk of harm to a child without proof of actual harm.
The State notes that its proposition is bolstered by numerous appellate opinions, all holding that N.J.S.A. 2C:24-4(a), in all its incarnations, subsumed exposing a child to a substantial risk of harm into the statute through Title 9. The State maintains that "risk of harm" is apparent from the plain language of the statute.
The State reasons that if conduct violates more than one statute, prosecutors retain discretion in deciding which charge to pursue provided that they do not discriminate against any class of defendants and that their choice is not arbitrary, capricious, or a patent or gross abuse of discretion.
C.
The Attorney General also argues that both the plain language and legislative history of N.J.S.A. 2C:24-4(a) indicate the Legislature's intent to include "risk of harm." The Attorney General notes that the title of the statute -- Endangering Welfare of Children -- connotes legislative intent to include the risk of harm. The Attorney General counters with specific references defendant's notion of linguistic gymnastics by the Appellate Division, with respect to **590 its finding that "causes harm" equals "risk of harm." The Attorney General notes that "endanger" is defined as "put[ting] (someone or something) at risk or in danger." (quoting New Oxford American Dictionary 561 (1st ed. 2001) ). The Attorney General cites numerous appellate cases that interpret N.J.S.A. 2C:24-4(a)(2) to encompass a substantial risk of harm. Taking the precedent and common definitional usage together, the Attorney General maintains that defendant knowingly subjected the six children in her care to a substantial risk of harm because the children had easy access to a large quantity and variety of drugs intermingled among their toys and clothing. The Attorney General underscores the likely physical danger to the children of unwittingly ingesting the openly displayed drugs and the potential emotional damage stemming from a child's exposure to drugs and drug trafficking.
Lastly, the Attorney General maintains that prosecutors historically retain broad prosecutorial discretion when a defendant's action violates more than one statute. With the defendant having proffered no proofs that the prosecutor abused her *965 discretion or acted arbitrarily or capriciously, the Attorney General argues that the Appellate Division decision should be affirmed.
III.
A.
In reviewing the grant or denial of a motion for a judgment of acquittal, we apply the same standard as the trial court. State v. Sugar, 240 N.J. Super. 148, 153, 572 A.2d 1170 (App. Div. 1990) (citing State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964) ). That standard is the same whether the motion is made at the close of the State's case, at the end of the entire case, or after a jury returns a guilty verdict under Rule 3:18-2. State v. Kluber, 130 N.J. Super. 336, 341, 327 A.2d 232 (App. Div. 1974). We will deny a motion for a judgment of acquittal if
the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a **591 jury to find that the State's charge has been established beyond a reasonable doubt.
[ Id. at 341-42, 327 A.2d 232 (citing State v. Mayberry, 52 N.J. 413, 436-37, 245 A.2d 481 (1968) ; State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967) ).]
Questions pertaining to statutory interpretation are legal in nature, State v. S.B., 230 N.J. 62, 67, 165 A.3d 722 (2017) (citing State v. Revie, 220 N.J. 126, 132, 104 A.3d 221 (2014) ), so "[w]e review such decisions de novo, 'unconstrained by deference to the decisions of the trial court or the appellate panel,' " ibid. (quoting State v. Grate, 220 N.J. 317, 329, 106 A.3d 466 (2015) ).
In interpreting a statute, we "give words 'their ordinary meaning and significance,' " acknowledging that the "statutory language is 'the best indicator of [the Legislature's] intent.' " Tumpson v. Farina, 218 N.J. 450, 467, 95 A.3d 210 (2014) (alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ). At the same time, "[w]e will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit." Id. at 467-68, 95 A.3d 210. We only resort to extrinsic evidence, such as legislative history and committee reports, in the event that the statutory language at issue is ambiguous. Id. at 468, 95 A.3d 210.
B.
N.J.S.A. 2C:24-4(a)(2) provides, in pertinent part:
[a]ny person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who causes the child harm that would make the child an abused or neglected child as defined in [N.J.S.A.] 9:6-1, [N.J.S.A.] 9:6-3 and ... [ N.J.S.A. 9:6-8.21 ] is guilty of a crime of the second degree.
The three subsections of Title 9 incorporated by the Legislature into N.J.S.A. 2C:24-4(a)(2) are linchpins to the statute's applicability to the facts before us.
N.J.S.A. 9:6-1 includes eight actions that constitute child abuse, none of which are germane here.
N.J.S.A. 9:6-3 delineates, in relevant part, that
**592 [a]ny parent, guardian or person having the care, custody or control of any child, who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed *966 to be guilty of a crime of the fourth degree.
[ (emphasis added).]
See also the second dissent,[1] post at 600, 192 A.3d at 970-71 (Rabner, C.J., dissenting) ("[ N.J.S.A. 9:6-3 ] also covers behavior that places a child at substantial risk of harm.").
N.J.S.A. 9:6-8.21, in pertinent part, defines "[a]bused or neglected child" as including:
a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian ... to exercise a minimum degree of care ... in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof... or by any other acts of a similarly serious nature requiring the aid of the court.
[ (emphases added).]
As a consequence, N.J.S.A. 2C:24-4(a)(2)"is clearly and readily capable of comprehension." State v. M.L., 253 N.J. Super. 13, 30, 600 A.2d 1211 (App. Div. 1991). We see no ambiguity in the Legislature incorporating a "substantial risk" of harm from N.J.S.A. 9:6-8.21 into N.J.S.A. 2C:24-4(a), so the appellate panel here properly concluded that "[a]pplying this rule of construction would seemingly result in an uncomplicated interpretation of the statutory offense." N.J.S.A. 2C:24-4(a)(2), plainly, does not delineate two distinct elements -- proof of actual harm and harm qualifying as abuse or neglect under Title 9. Rather, the statute defines "harm" by expressly incorporating N.J.S.A. 9:6-8.21, which proscribes exposing a child to a substantial risk of harm.
We agree with the first dissent that "[w]ords make a difference," post at 601, 192 A.3d at 971 (Albin, J., dissenting), and as such, we are bound to uphold the Legislature's express incorporation of N.J.S.A. 9:6-8.21 into N.J.S.A. 2C:24-4, prohibiting the exposure of children to a substantial risk of harm. Those principal **593 purposes then become the statute's principal commands. No extrinsic evidence is necessary, rendering the first dissent's analysis of legislative history unnecessary. Since the plain language of the statute is clear in its incorporation of N.J.S.A. 9:6-8.21, we similarly need not resort to the "doctrine of lenity" which is only pertinent "if an analysis of statutory language ... fails to resolve a statutory ambiguity." State v. McDonald, 211 N.J. 4, 18, 47 A.3d 669 (2012) (citing State v. Gelman, 195 N.J. 475, 482, 950 A.2d 879 (2008) ).
C.
In light of the statute's plain language, our appellate courts for decades have unanimously held that the State is not required to prove actual harm to a child to convict under N.J.S.A. 2C:24-4(a)(2). Instead, they have concluded that proof of a child's exposure to a substantial risk of harm is sufficient to sustain a conviction. See, e.g., State v. N.A., 355 N.J. Super. 143, 150-51, 809 A.2d 825 (App. Div. 2002) ; M.L., 253 N.J. Super. at 31, 600 A.2d 1211 (collecting cases).
In M.L., after police arrested the defendant for shoplifting, she conveyed that her fifteen-month-old child, C.L., was with a babysitter. 253 N.J. Super. at 17, 600 A.2d 1211. Police later entered the defendant's apartment and discovered C.L. asleep, unattended in a playpen. Id. at 18, 600 A.2d 1211. C.L. was sweating in the ninety-degree heat, and the apartment was littered with dirty diapers and laundry, plates of spoiled food, and dog feces. Ibid. A jury later found the defendant guilty of *967 endangering the welfare of children under N.J.S.A. 2C:24-4(a)(2). Ibid. On appeal, the defendant argued that "the trial court misinterpreted the statute as not requiring the State to show that the child suffered physical harm." Id. at 29, 600 A.2d 1211. The Appellate Division disagreed and affirmed, concluding that "[w]e do not read [ N.J.S.A. 2C:24-4(a) ] as calling for a demonstration of actual physical harm." Id. at 31, 600 A.2d 1211. **594 Over ten years later, in N.A., a jury convicted the defendant under N.J.S.A. 2C:24-4(a) for having severely beaten her two-year-old son (actual harm). 355 N.J. Super. at 145, 146, 809 A.2d 825. The Appellate Division affirmed the conviction, holding that N.J.S.A. 2C:24-4(a)(2) and the Title 9 offense of cruelty and neglect of children each "criminalizes the same harm or risk of harm to the child." Id. at 153, 809 A.2d 825. Specifically, the Appellate Division concluded that the incorporation by reference of N.J.S.A. 9:6-8.21 in N.J.S.A. 2C:24-4(a)(2), "does not require that any act or omission of the parent result in specific harm to the child. The focus is on the conduct of the parent which exposes the child to a 'substantial risk' of death or physical harm." Id. at 150-51, 809 A.2d 825.
As is apparent, our appellate courts have been unanimous over several decades in interpreting N.J.S.A. 2C:24-4(a)(2), through all its iterations, as not requiring proof of actual harm to the child. N.A., 355 N.J. Super. at 150-51, 809 A.2d 825 ; M.L., 253 N.J. Super. at 31, 600 A.2d 1211. Not one published appellate opinion holds otherwise. We find no reason to disturb that decades-old sound precedent predicated on the plain language of the statute.
In conjunction we note, "the legislative branch is presumed to be aware of judicial constructions of statutory provisions." State v. Singleton, 211 N.J. 157, 180, 48 A.3d 285 (2012) (citing White v. Township of North Bergen, 77 N.J. 538, 556, 391 A.2d 911 (1978) ). It is eminently fair to observe that "where a statute has been judicially construed, the failure of the Legislature to subsequently act thereon evidences legislative acquiescence in the construction given the statute." White, 77 N.J. at 556, 391 A.2d 911.
Had the Legislature chosen to insist on proof of actual harm to a child to convict under N.J.S.A. 2C:24-4(a)(2), it was free to amend the statute, as it did in other aspects of the statute, in the nearly three decades since M.L. In 1992, the Legislature amended N.J.S.A. 2C:24-4(a) to elevate the offense of child endangerment from a third- and fourth-degree crime to a second- and third-degree **595 crime, but it conspicuously did not amend the statute to require proof of actual harm. L. 1992, c. 6, § 1; State v. Galloway, 133 N.J. 631, 657-58, 628 A.2d 735 (1993) (noting 1992 amendment elevating offense levels). After that amendment, an Appellate Division panel once again upheld the precedent of interpreting N.J.S.A. 2C:24-4(a) as including the exposure of a child to a substantial risk of harm. N.A., 355 N.J. Super. at 150-51, 809 A.2d 825. In 2013, the Legislature broadened the scope of N.J.S.A. 2C:24-4(a) by raising the age of statutorily protected children from sixteen to eighteen. L. 2013, c. 51, § 13. And again, the Legislature chose not to add language that could undercut precedent by requiring the State to prove actual harm in order to convict under the statute.
The first dissent insists that "[a] sensible textual construction of the endangering statute" would "require harm as a precondition to the examples given in the abuse-and-neglect statutes." Post at 601, 192 A.3d at 971 (Albin, J., dissenting). The statute, however, delineates nothing about the use of preconditions, but instead expressly subsumes the Title 9 provisions *968 signaling a legislative intent to broaden the statutory definition of "harm." "It would show little respect for the legislature were courts to suppose that the lawmakers meant to enact an irrational scheme." State v. Livingston, 172 N.J. 209, 228, 797 A.2d 153 (2002) (Long, J., dissenting) (quoting Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 135, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (Ginsburg, J., concurring) ).
Based on the statutory construction, the Legislature's incorporation of Title 9 provisions into N.J.S.A. 2C:24-4(a), and thirty years of ample judicial precedent, we agree with the Appellate Division's decision in this case that the State successfully proved that defendant exposed the children in her care to imminent danger and a substantial risk of harm pursuant to N.J.S.A. 2C:24-4(a).
Children are naturally curious and inquisitive. Here, we had six underage children, ranging in age from one to thirteen, housed in **596 a confined space. Drugs hauntingly surrounded children's toys and clothing. The ease of access to cocaine, heroin, and marijuana, and the attraction of brightly colored pills, all created a potentially lethal trap for the children that could have been easily sprung at any moment.
With this evidence developed by the State at trial, the Appellate Division properly concluded that N.J.S.A. 2C:24-4(a), incorporating Title 9, includes exposing a child to a substantial risk of harm.
D.
We briefly consider the concerns of giving prosecutors too much discretion in choosing to charge under N.J.S.A. 2C:24-4(a)(2), a second-degree crime, over Title 9, a fourth-degree offense.
We have previously held that criminal statutes can "overlap in prohibiting the same basic act," and in those situations "the proper prosecuting authority in the sound exercise of the discretion committed to him [or her] may proceed under either act." State v. States, 44 N.J. 285, 292, 208 A.2d 633 (1965). The United States Supreme Court has similarly held that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." United States v. Batchelder, 442 U.S. 114, 123-24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." Id. at 124, 99 S.Ct. 2198. Prosecutorial discretion, however, is not unlimited, and "[j]udicial oversight is mandated to protect against arbitrary and capricious prosecutorial decisions." State v. Vasquez, 129 N.J. 189, 196, 609 A.2d 29 (1992). A defendant who proves that a prosecutor's "exercise of discretion was arbitrary and capricious would be entitled to relief." Ibid.
In Batchelder, the defendant was sentenced to five years' imprisonment in violation of a federal statute prohibiting previously-convicted felons from receiving firearms via interstate commerce.
**597 442 U.S. at 116, 99 S.Ct. 2198. The Seventh Circuit remanded for resentencing given that a separate federal statute proscribed identical conduct and allowed no more than a two-year sentence. Id. at 116-17, 99 S.Ct. 2198. The Supreme Court reversed, finding that prosecutors retain discretion to "prosecute under either [act]," barring discrimination, when criminal conduct triggers more than one statute. Id. at 123-24, 99 S.Ct. 2198.
In an analogous proceeding concerning the availability of disparate penalties under separate statutory schemes, in State v. Reed, the defendant was sentenced to two to three years' imprisonment under the Drug Act for unauthorized possession of *969 narcotics. 34 N.J. 554, 556, 170 A.2d 419 (1961). The Appellate Division remanded, citing to another act which made unauthorized use of narcotics a disorderly persons offense, taking it out of the Drug Act's purview. Ibid. Responding to the defendant's arguments of unconstitutionally broad prosecutorial discretion, we held that when criminal conduct violates both statutes, "the decision to proceed under either or both of the statutes is traditionally the State's." Id. at 573, 170 A.2d 419.
Here, there is no evidence that the prosecutor abused her discretion in choosing to **598 charge defendant under N.J.S.A. 2C:24-4(a)(2) instead of Title 9. Defendant bears the burden of proving that the prosecutor acted arbitrarily and capriciously, Vasquez, 129 N.J. at 196, 609 A.2d 29, but provided no reasonable justification as to why the prosecutor should have charged her under Title 9 instead of N.J.S.A. 2C:24-4(a)(2). Rather, defendant claims generally that prosecutors retain too much discretion in choosing whether to charge defendants under N.J.S.A. 2C:24-4(a)(2) or Title 9. That contention, however, is directly contrary to our precedent that provides prosecutors such discretion. See States, 44 N.J. at 292, 208 A.2d 633.
Defendant has similarly not provided any evidence that the prosecutor's decision to charge under N.J.S.A. 2C:24-4(a) was discriminatory or predicated on prejudice. Indeed, the record here provided the prosecutor ample justification for her decision to charge defendant under N.J.S.A. 2C:24-4(a)(2). As we have recently underscored in the Title 9 context, "a court need not sit idly by until a child is actually impaired by parental inattention or neglect." DCPP v. A.B., 231 N.J. 354, 370, 175 A.3d 942 (2017) (citing DYFS v. A.L., 213 N.J. 1, 23, 59 A.3d 576 (2013) ). In short, danger awaited the six children at every turn in the motel room given their easy access to heroin, cocaine, marijuana, and pills, and for that reason, we find that the prosecutor did not abuse her discretion in choosing to charge defendant under N.J.S.A. 2C:24-4(a) instead of Title 9.
IV.
We affirm the judgment of the Appellate Division upholding the trial court's denial of defendant's motion for a judgment of acquittal.
JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICE LaVECCHIA joins. CHIEF JUSTICE RABNER filed a dissent.

For convenience, we refer to Justice Albin's dissenting opinion as "the first dissent" and Chief Justice Rabner's dissenting opinion as "the second dissent."