**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4517-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVON M. GORDON, a/k/a
DAVON M. GORDAN, and
DEVON GORDON,

     Defendant-Appellant.

_____

Submitted February 13, 2019 - Decided July 17, 2019

Before Judges Fuentes and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-06-1582.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following denial of his motion to exclude statements he made to the police, defendant Davon M. Gordon was convicted by a jury of fourth-degree impersonation of a law enforcement officer, N.J.S.A. 2C:28-8(b), and sentenced to eighteen months in State prison. He appeals his conviction, raising the following issues:

> POINT I
>
> THERE WAS NO EVIDENCE THAT GORDON INTENDED FOR ANYONE "TO SUBMIT TO," OR OTHERWISE ACT "IN RELIANCE UPON," PRETENDED "OFFICIAL AUTHORITY." N.J.S.A. 2C:28-8B. BECAUSE THE STATE INTRODUCED NO EVIDENCE OF THE REQUIRED MENTAL STATE, THE COURT ERRED BY DENYING GORDON'S MOTION FOR A JUDGMENT OF ACQUITTAL. U.S. Const., Amends. V, XIV; N.J. Const., Art. I, Pars. 1, 9, 10.
>
> POINT II
>
> BECAUSE LAW ENFORCEMENT FAILED TO ADMINISTER MIRANDA WARNINGS TO GORDON DESPITE INTERROGATING HIM WHEN HE WAS NOT FREE TO LEAVE, THE TRIAL COURT ERRED BY DENYING THE MOTION TO SUPPRESS GORDON'S RESPONSES. U.S. Const., Amends. V, XIV; N.J. Const., Art. I, Pars. 1, 9, 10.

Because we agree with the trial court judge that defendant was not in custody when he made the statements complained of to the police, and his motion for acquittal was correctly denied, we affirm.

The facts are straightforward and easily summarized. Defendant took his car to be repaired at a shop in South Orange, identifying himself to the owner as a Newark detective. The owner saw a badge at defendant's waist and defendant provided him with a PBA card. Thus when defendant asked for "a break" on the bill, the owner, believing defendant to be a police officer, agreed to apply his long-standing policy of supporting law enforcement officers by discounting the repairs.[1]

Sometime later, however, the owner became suspicious as to whether defendant was actually a police officer. When defendant returned to the shop complaining about the repairs, the owner asked defendant to leave the premises. When defendant refused, the owner called the police. The arresting detective testified at an N.J.R.E. 104 hearing as to what occurred after police arrived.

---

[1] We express no opinion on the ethics of any law enforcement officer availing him or herself of such a discount. <u>See</u> <u>International Association of Chiefs of Police Law Enforcement Code of Ethics</u>, https://www.theiacp.org/resources/law-enforcement-code-of-ethics (last visited July 11, 2019).

A-4517-16T2

The detective stated that when he drove up, two or three other officers were already at the scene. Defendant was standing outside. According to the detective, the owner had complained previously about defendant, prompting the detective to run a record check from which he learned defendant had been arrested previously for impersonating a police officer. The detective testified he approached defendant as he stood outside and asked him for identification. Defendant gave him a driver's license and the detective then went over to speak to the owner, who was also standing outside.

The detective returned to continue his questioning of defendant for another five to ten minutes. After defendant denied being a police officer in response to the detective's question, the detective asked whether defendant had a badge. Defendant lifted his shirt to reveal a gold badge clipped to his waistband. When the officer asked whether defendant had any other identification, defendant gave the detective several Newark Police business cards and an FOP card. When defendant again denied he was a police officer, he was placed under arrest.

In response to questions put to him on cross-examination, the detective admitted that had defendant refused to speak with him, the detective would have asked defendant to stay in order to complete his investigation. The

4

detective further conceded that had defendant not agreed to stay, the detective "probably" would not have let him leave, unless the owner determined not to "pursue any charges." The detective, however, testified defendant agreed to answer his questions, was never handcuffed prior to his arrest and none of the officers "put their hands on [him]." According to the detective, the only witness at the N.J.R.E. 104 hearing, he was the first officer to approach defendant, and defendant simply "stayed in the same spot" while the detective stepped away briefly to speak to the owner.

Defendant contended his responses to the detective's questions and his turning over the badge and business cards should all be excluded because he was subjected to custodial interrogation without Miranda[2] warnings. Defendant argued the detective's testimony established he was in custody as he was not free to leave.

The trial court judge rejected that argument. Finding the detective's testimony credible, the judge concluded defendant answered the detective's questions voluntarily, and his movement was not restricted in any manner. The judge found, "[t]o the contrary, it's clear that [defendant] had returned to the station to either have his car fixed properly . . . or to receive a refund of the

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

payment he had made for services rendered and was not going to leave the premises until that problem was satisfactorily resolved." The judge further found the detective's questions were nothing more than "general on-the-scene questioning" not triggering the necessity for Miranda warnings.

Our review of a trial court's decision to admit a defendant's statement to police is circumscribed. State v. A.M., 237 N.J. 384, 395 (2019). We must defer to the trial court's factual findings "when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). Our review of the court's legal conclusions, however, is de novo. State v. Tillery, __ N.J. __, __ (2019) (slip op. at 34).

Although the constitution is not offended by police engaging in "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process," Miranda, 384 U.S. at 477, a custodial interrogation, even one occurring in a public place, requires warnings, see State v. P.Z., 152 N.J. 86, 102-03 (1997). Miranda protections apply "when a person is both in custody and subjected to police interrogation." State v. Hubbard, 222 N.J. 249, 270 (2015).

6

We disagree with the trial court judge that the detective's questions here constituted only general questions as to the facts, not amounting to interrogation. There was, of course, no constitutional impediment to the detective approaching defendant and asking him for identification. See Florida v. Royer, 460 U.S. 491, 497 (1983); State v. Davis, 104 N.J. 490, 497 (1986). But the trial judge was incorrect that the detective's more specific questions to defendant, including whether he possessed a badge, were no different. That question was obviously likely to engender an incriminating response and thus amounted to interrogation. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (defining interrogation as direct questions likely to result in incriminating statements); Hubbard, 222 N.J. at 267. The State concedes as much in its brief by failing to even argue the issue.

Thus the question as to whether defendant's unwarned statement should have been admitted turns on whether defendant was free to leave when the detective interrogated him. See State v. Stampone, 341 N.J. Super. 247, 252-53 (App. Div. 2001). The test for custody is an objective one; thus defendant's argument regarding the detective's subjective intent to detain him misses the mark. As our Supreme Court has explained,

> whether a suspect is in custody depends on the
> objective circumstances of the interrogation, not on

7

> the subjective views harbored by either the interrogating officers or the person being questioned. That is, a police officer's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation.
>
> [State v. O'Neal, 190 N.J. 601, 615-16 (2007) (citations omitted)].

Defendant's subjective intent to remain in the place of questioning is not controlling either. We therefore reject the trial court's legal conclusion that defendant was not in custody because he was not going to leave the repair shop until his issue with the owner had been resolved. See State v. Boone, 232 N.J. 417, 426 (2017) (noting the de novo review of the trial court's legal conclusions in suppression decisions). We agree with its conclusion that defendant was not in custody, however, based on the detective's testimony, which the court deemed credible. See id. at 426-27.

Specifically, the detective testified his questioning of defendant was brief and conversational, lasting no more than five to ten minutes; it occurred outside in a public place; and although there were several officers present, they did not surround defendant or prevent him from leaving. See State v. Brown, 352 N.J. Super. 338, 354-56 (App. Div. 2002) (discussing several factors relevant to question of custodial detention). Indeed, there is nothing in this

record to suggest the police restricted defendant's movements or directed him to remain at any point during the conversation leading up to his arrest.

The detective did not testify he told defendant to stay put while he went to speak to the owner. Instead he claimed defendant simply remained where he was while the detective stepped away briefly to confer with the owner who was standing nearby. Accordingly, we cannot find the actions of the detective and the surrounding circumstances would reasonably lead someone in defendant's place to believe he could not freely leave under established case law. We thus reject defendant's argument that he was in custody when questioned by the detective. See State v. Coburn, 221 N.J. Super. 586, 596 (App. Div. 1987).

Defendant's remaining argument requires additional analysis. Defendant was convicted of impersonating a public servant or law enforcement officer under N.J.S.A. 2C:28-8. N.J.S.A. 2C:28-8(b), the provision specifically referring to impersonating a law enforcement officer,[3] provides:

> A person commits a crime of the fourth degree if he falsely pretends to hold a position as an officer or member or employee or agent of any organization or association of law enforcement officers with purpose

---

[3] N.J.S.A. 2C:28-8(a), a nearly identical provision, addresses impersonating a public servant, which is graded as a disorderly persons offense.

to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense.

Defendant contends his motion for acquittal should have been granted because the State failed to prove he had a specific intent to induce the shop owner "to submit to" or "act in reliance upon" his "pretended official authority," arguing there is no law enforcement authority "to obtain discounts on services rendered by private businesses."

We review the grant or denial of a motion for a judgment of acquittal applying the same standard as the trial court. State v. Fuqua, 234 N.J. 583, 590 (2018). A court is bound to deny a motion for acquittal if

> the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt.
>
> [Id. at 590-91.]

Here, defendant reads the provision to require a specific intent, which is to act with the purpose to induce another to submit to pretended official "law enforcement" authority, not found in the statute.

N.J.S.A. 2C:28-8 was derived from Model Penal Code (MPC) section 241.9. Cannel, N.J. Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:28-8 (2019); N.J.S.A. 2C:28-8 (Historical and Statutory Notes). "When a provision of the Code is modeled after the MPC, it is appropriate to consider the MPC and any commentary to interpret the intent of the statutory language." State v. Robinson, 217 N.J. 594, 606 (2014).

MPC section 241.9 provides "[a] person commits a misdemeanor if he falsely pretends to hold a position in the public service with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice."[4] The MPC Commentaries explain the aim of the statute "is to prevent prejudicial reliance upon pretense of public authority" and thus protect individual citizens against fraud "that may be accomplished by creating a false impression" of such authority. Model Penal Code and Commentaries, cmt. 2 on § 241.9 at 194-95 (1980).

---

[4] The Commentaries explain the tentative draft of the section proposed a two-tiered grading scheme. "Impersonation of a public servant with intent to induce reliance, whether or not prejudicial to the other party" with more serious sanctions for one impersonating a law enforcement officer. Model Penal Code and Commentaries, cmt. 3 on § 241.9 at 197. Our Legislature obviously elected such an approach when it amended N.J.S.A. 2C:28-8 to add subsection (b) in 2000, although not requiring prejudice to the other party.

A-4517-16T2

The Commentaries explain that because the MPC provision is focused on the actor's purpose to induce reliance by another, "the Model Code provision would cover an actor who pretended to hold a position in the public service in order to secure private credit." Id. at 195. Thus "[t]he Model Code takes the position that impersonation of a public servant to achieve private gain should be covered, even if it does not involve acts under pretense of official authority" and excludes one "who acts in the false capacity of a public servant but without intent thereby to harm anyone." Id. at 196 (emphasis added). The commentaries explain "[t]hese judgments are implemented by requiring impersonation 'with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice.'" Ibid.

In addition to the persuasive authority of the Model Code Commentaries, the statute's plain language makes clear the "official authority" referenced in the statute is not "the power of law enforcement officers to make arrests, to seize, and to search" as defendant asserts. See State v. Gandhi, 201 N.J. 161, 176 (2010) (noting the best indicator of legislative intent is most often the plain language of the statute). The language that makes that obvious is the inclusion of "member[s] or employee[s] or agent[s] of any organization or

association of law enforcement officers" among those it is a crime to impersonate, as not all possess the law enforcement authority to search, seize or make arrests.[5]  See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (noting the importance of ascribing statutory words their ordinary meaning and reading "them in context with related provisions so as to give sense to the legislation as a whole").

Because the evidence would have permitted the jury to find beyond a reasonable doubt that defendant acted with the purpose to induce the shop owner to act in reliance on his pretended official authority as a law enforcement officer, his motion for acquittal at the conclusion of the State's case was properly denied.  See State v. Reyes, 50 N.J. 454, 458-59 (1967).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5]  Noting there is nothing in the legislative history of the 2000 amendment to include members, agents and employees of law enforcement officer associations explaining why they were added, Cannel posits "[p]erhaps there was a perceived problem with persons soliciting contributions pretending to be acting for police organizations."  Cannel, N.J. Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:28-8 (2019).