# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1184-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.W.,

     Defendant-Appellant,

and

M.H., K.S., and T.W.,

     Defendants.

_____

IN THE MATTER OF A.W.-S.,
M.S., J.H., and MA.H.,

     Minors.

_____

Submitted March 24, 2020 – Decided May 18, 2020

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0231-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Celeste Dudley-Smith, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Travis A. Provost, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

Defendant A.W. (Anna)[1] appeals from a March 27, 2018 fact-finding order determining she abused and neglected her four children, A.W.-S. (Adam), M.S. (Manny), J.H. (Jen), and MA.H. (Mary). M.H. (Mark) is the biological father of Jen and Mary. K.S. (Kenny) is the biological father of Adam and Manny. We affirm.

In December 2017, the Newark Police Department and Essex County Prosecutor's Office Narcotics Task Force (ECPO) executed a search warrant at

---

[1] We use pseudonyms and initials for the privacy of the parties. R. 1:38-3(d)(12).

Anna and Mark's home. At the time, eleven-year-old Manny and four-year-old Mary were present in the house with Anna and Mark. During the raid, the officers discovered an assault handgun and a loaded multi-round magazine on a shelf in Mary's bedroom closet. A secondary box of ammunition containing live rounds was also recovered.

The search revealed seven bricks of heroin and a large quantity of cocaine packages hidden between the mattress and box spring in Anna and Mark's bedroom. In the kitchen, the officers also discovered a plastic bag containing oxycodone pills and drug dealing paraphernalia, including a scale, empty packets and a razor blade.

While the search was being conducted and in the presence of an officer, Mark stated to Anna, "They found the gun," and "Somebody told on us." He then quickly stated, "I mean . . . I mean on me." Mark told the officers he was the owner of the seized items and Anna did not know the gun and drugs were in the home.

Anna and Mark were arrested. Anna called her mother and asked her to pick up Manny and Mary. The other two children were already at their grandmother's house.

A-1184-18T4

Thereafter, the New Jersey Division of Child Protection and Permanency (the Division) received a referral advising of Anna and Mark's arrest. When the children were questioned by the Division, Adam, then twelve years old, stated he had observed stacks of money and drugs in the house. He also had seen Anna take some of the money and use it to buy household food and other items. He described seeing bags containing green pills as well as white powder and pills. He also stated he overheard Anna and Mark argue about the children's safety because Mark had drugs in the house. Manny and Jen denied seeing any drugs in the home.

In its investigation, the Division discovered the children's maternal grandmother had a criminal history and a prior substantiated finding of abuse and neglect. Therefore, the Division conducted an emergency removal of the children. Jen and Mary were placed with their maternal uncle; Adam and Manny went to Kenny's home.

In an interview with the Division a few days later, Mark reiterated that the drugs and gun were his, Anna and the children were unaware of the criminal activity going on in the house, and they did not know there was a gun or drugs in the home. Anna claimed she was unaware that Mark kept drugs and a gun in

4

the home, and the children also had no knowledge of drugs or a weapon in the house. Anna stated she was unaware of Mark's criminal activity.

The next day, the Division filed a complaint and order to show cause against Anna and Mark for custody, care, and supervision of the children. The court granted the requested relief. The custody, care, and supervision of Jen and Mary remained with the Division. Kenny had physical custody of Adam and Manny. The Division enabled visits between the children and their parents at the county jail.

At the conclusion of its investigation, the Division found the allegations of abuse and neglect against Anna and Mark were established. Thereafter, the court held a fact-finding hearing.

The Division presented two caseworkers who testified regarding the referral, their investigation, and the interviews of the children, and Anna and Mark. In addition, ECPO Sergeant Reginald Holloway described the drug raid of Anna and Mark's home and, specifically, the statements Mark made concerning the gun and Anna's lack of knowledge of any of the illicit activity.

At the conclusion of the hearing, the Family Part judge issued an oral decision and order, finding the Division proved by a preponderance of the

evidence that Anna and Mark abused or neglected the children, pursuant to N.J.S.A. 9:6-8.21 to -8.73.

The judge found the Division caseworkers and Holloway credible. She noted Mark did not deny he was selling drugs from the home and that he had a gun. However, the judge did not find Mark or Anna credible in their claims that Anna was unaware of the drug activity. She referenced Adam's statement that he had seen drugs and stacks of money in the home and had heard Anna and Mark fighting about the drugs and the dangers they posed. Therefore, the judge concluded Anna "was aware of the situation and although she may not have approved or participated, she did not take reasonable steps to remove the children from the risk of harm of having drugs and a gun in the household."

In July 2018, the children were returned to Anna's custody. The litigation was terminated in October 2018.

On appeal, Anna asserts the trial court erred in its finding of abuse and neglect. She contends that because Mark took responsibility for the drugs and gun, pleading guilty to some of the criminal charges, there is no evidence to support the court's determination that Anna did, or failed to do, anything that impaired her children's mental or emotional condition.

A-1184-18T4

Anna further contends that none of the children could reach the gun on the shelf in Mary's bedroom. Moreover, she states the mere presence of a gun in a household where children reside is not, without more, sufficient proof that the children were placed at a substantial risk of harm.

Our review of a family court's decision is limited. In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citation omitted). Particular deference should be given to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise . . . ." Id. at 413. Unless the trial judge's factual findings are "so wide of the mark that a mistake must have been made," they should not be disturbed, even if the reviewing court would not have made the same decision. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation omitted).

"Abuse and neglect actions are controlled by the standards set forth in Title Nine of the New Jersey Statutes." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 31 (2011) (citation omitted). An "[a]bused or neglected child" is defined as one under the age of eighteen

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming

7

A-1184-18T4

> impaired as the result of the failure of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

At a fact-finding hearing, the Division must prove "by a preponderance of the competent, material and relevant evidence" that the defendant abused or neglected his or her children. N.J. Div. of Youth & Family Servs. v. C.H., 428 N.J. Super. 40, 62 (App. Div. 2012) (citation omitted).

Our Supreme Court has stated that "[c]ourts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of DMH, 161 N.J. 365, 383 (1999) (citation omitted). "[W]hen there is no evidence of actual harm, the focus shifts to whether there is a threat of harm." N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015) (citation omitted). "[T]he standard is not whether some potential for harm exists. A parent fails to exercise a minimum degree of care when [he or] she is 'aware of [inherent] dangers . . . and fails adequately to supervise the child or recklessly creates a risk of serious injury to the child.'" Id. at 183-84 (citation omitted). "[A] finding of abuse and neglect can be based on proof of imminent danger and a substantial risk of harm." Id. at 178 (citation omitted).

A-1184-18T4

The inquiry of whether a parent failed to exercise a minimum degree of care "should focus on the harm to the child and whether that harm could have been prevented had the [parent] performed some act to remedy the situation or remove the danger." G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 182 (1999). A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181 (citation omitted). In deciding whether a child has been abused or neglected, a court "must base its findings on the totality of the circumstances . . . ." N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

We are satisfied the substantial credible evidence in the record supports the court's conclusion that Anna exposed her children to imminent danger and a substantial risk of harm. Four children, aged four to twelve, resided in Anna and Mark's home where an assault handgun and a large quantity of ammunition were found in the four-year-old's bedroom closet.

In addition, a substantial quantity of drugs was found in the kitchen along with drug paraphernalia. Adam reported he had seen large stacks of money and

pills in plastic bags throughout the home. He had also heard Mark and Anna argue about the drug activity.

In light of Adam's statement and the location of drugs in the kitchen and Anna's bedroom, the judge did not find Anna's assertion credible that she had no knowledge of the drug dealing activities taking place in her home. In addition, Mark's statement during the raid indicates Anna was aware of the presence of the gun.

"The ease of access" to cocaine, heroin, and oxycodone as well as to a gun and ammunition "created a potentially lethal trap for the children that could have been easily sprung at any moment." State v. Fuqua, 234 N.J. 583, 596 (2018). Here, the totality of the circumstances supports the trial court's conclusion that Anna exposed the children to a substantial risk of harm in allowing them to reside in an environment where drugs and weapons were present and accessible.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1184-18T4