# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2384-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.M.,

     Defendant-Respondent,

and

A.C.,[1]

     Defendant-Appellant.

_____

IN THE MATTER OF J.C.,
a minor.

_____

Argued March 25, 2026 – Decided April 15, 2026

---

[1]  We use initials and pseudonyms to protect the confidentiality of these proceedings. R. 1:38-3(d)(12).

Before Judges Mayer, Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0098-24.

John A. Albright, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; John A. Albright, of counsel and on the briefs).

Catherine Reid, Designated Counsel, argued the cause for respondent N.M. (Jennifer N. Sellitti, Public Defender, attorney; Catherine Reid, on the brief).

Julie B. Colonna, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency (Jennifer Davenport, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Julie B. Colonna, on the brief).

Neha Gogate, Assistant Deputy Public Defender, argued the cause for minor J.C. (Jennifer N. Selletti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Neha Gogate, of counsel and on the brief).

PER CURIAM

Defendant A.C. (father) appeals from a December 11, 2024 order denying his motion for unsupervised parenting time with his daughter, J.C. (Julia), without a plenary hearing, and a March 4, 2025 order terminating the litigation. We affirm both orders.

2

Father and defendant N.M. (mother) are the biological parents of Julia born in January 2024. The parents have a history of involvement with plaintiff New Jersey Division of Child Protection and Permanency (Division).

More than a decade before Julia's birth, in July 2012, father pleaded guilty to third-degree endangering the welfare of a child and other charges. The charges stemmed from an incident when father was eighteen and allegedly had sex with a thirteen-year-old girl. As part of the sentence imposed after his guilty plea, father was sentenced to parole supervision for life (PSL). Father's PSL conditions prohibited unsupervised contact with minors. Since he was sentenced, father has been charged with, and incarcerated for, parole violations on several occasions.[2]

The Division received a referral from the hospital just after Julia's birth because mother tested positive for cocaine. Based on its investigation, the Division learned mother was homeless, lived with individuals who used crack cocaine, and allegedly continued to use drugs. Mother subsequently entered a treatment program for substance abuse.

---

[2] According to information in the record, father's parole violations occurred between 2012 and 2022, and involved his failure to report, criminal behavior, and drug use.

3                                                                      A-2384-24

The Division spoke to father about caring for Julia while mother participated in a treatment program. Although father wanted to be a part of Julia's life, he acknowledged his history of homelessness, arrests, and drug use rendered him unable to care for his daughter.

On January 16, 2024, the Division filed a verified complaint for custody of Julia due to concerns related to both parents' substance abuse and homelessness. We need not detail the numerous hearings held by the Family Part judge related to custody of Julia and the Division's services offered to mother and father. The issue before us focuses solely on the Family Part judge's denial of father's application to modify the conditions of his PSL and allow him to exercise unsupervised parenting time with Julia.

The record reflects the Parole Board at some point allowed father to exercise supervised parenting time with Julia. At a September 2024 compliance review hearing, father told the judge that his PSL conditions precluded his ability to have unsupervised parenting time with Julia. Father believed the judge had the authority to allow unsupervised parenting time with Julia, despite his PSL status, under N.J.A.C. 10A:72-2.6(c)-(f).

The judge responded that father's parole status prohibited his unsupervised contact with any minor. She suggested father complete a "living

 A-2384-24

with children assessment" and submit that assessment to the Parole Board with a request for modification of his PSL conditions.

At a December 2024 compliance review and follow up Title 30 hearing, father renewed his position that the judge had authority to modify his PSL conditions and allow unsupervised parenting time with Julia. Father requested a hearing so he could present a September 2024 living-with-child evaluation conducted by Zachary Yeoman, Psy.D. Father wanted to offer Dr. Yeoman's testimony at a hearing, who would then be subject to cross-examination, in support of unsupervised parenting time with Julia. Father expressed doubt that his parole supervisor would promptly consider his request to modify the PSL conditions and allow unsupervised parenting time with Julia.

The Law Guardian objected to father's request, arguing the Parole Board needed to address the issue before the Family Part judge could consider whether father's unsupervised parenting time with Julia was in the child's best interest. The Division also argued any modification to father's PSL conditions must "be addressed first and foremost through his parole."

The judge denied father's request without prejudice, finding the Parole Board was responsible for parole modification requests. The judge suggested father submit Dr. Yeoman's September 2024 evaluation to his parole supervisor

for review. In a December 11, 2024 order, the judge denied father's request for a plenary hearing to allow unsupervised parenting time with Julia.

On December 12, 2024, father forwarded Dr. Yeoman's evaluation to the Parole Board, requesting it modify his PSL conditions so he could exercise unsupervised parenting time with his daughter. Father's parole supervisors replied that the Parole Board would not consider unsupervised contact with Julia until father demonstrated "a period of compliance/stability" with the conditions of his parole.

On January 29, 2025, father moved before the Family Part "[f]or an order granting a hearing pursuant to N.J.A.C. 10A:71-6.12(e)(3) to determine if [he] can be unsupervised with his daughter." Father argued the Family Part was "the appropriate court" to hear his application because the language in N.J.A.C. 10A:71-6.12(e)(3) was "consistent with the Family Part's authority as given to it by the [L]egislature and the decisions and court rules of the New Jersey Supreme Court." The Division opposed father's motion.

In March 2025, the Family Part judge conducted a compliance review and addressed the Division's request to terminate the litigation and father's motion for unsupervised parenting time. The Division explained Julia had been reunified with mother without issue. The Division reported father's parole

6

officer advised father "would need to show a period of six months of compliance with his conditions of parole prior to any modification or consideration of the living with child assessment." The Division argued the judge should terminate litigation while maintaining father's parole conditions, and any modification of father's PSL conditions had to be implemented by the Parole Board. The Law Guardian supported the Division's request to terminate the litigation presuming father continued exercising supervised parenting time.

Mother supported termination of the litigation. However, she objected to continuing father's supervised parenting time with Julia. Mother supported father's motion because the supervision requirement prevented them from spending quality time as a family.

Father opposed termination of the litigation. Father also asserted the Division should want the litigation to remain open due to his continued need for services based on his January 30, 2025 positive drug test. Relying on the New Jersey Supreme Court's ruling in Division of Child Protection and Permanency v. J.C., 257 N.J. 451, 465-66 (2024), father argued termination of the litigation would contradict the holding in that case because his substance abuse issues had not been remediated and his parole restrictions represented an impermissible continuing restraint on his parenting time.

The Division distinguished J.C. from the facts in this case. It argued father's parole conditions were not imposed by the Family Part and, therefore, did not preclude termination of the litigation. Further, the Division noted the Parole Board monitored father's substance abuse as part of his parole conditions. The Division contended its continued involvement regarding father was unnecessary and duplicative of the Parole Board's ongoing review of father's activities.

After considering the parties' arguments, the judge found "that it [wa]s in the best interests [of] . . . [Julia] that this litigation be terminated" because the Division reported no outstanding safety concerns for Julia under mother's care. Regarding father, the judge explained he remained subject to his PSL conditions unless modified by the Parole Board.

In denying father's motion, the judge distinguished J.C. because father's parole conditions were established by a criminal court judge rather than a Family Part judge. Because the Family Part was not the court imposing conditions on father's parenting time with Julia, the judge concluded she was not precluded from terminating the litigation.

Additionally, the judge acknowledged the Parole Board's response to father's informal request to modify the conditions of his parole. The judge noted

A-2384-24

the Parole Board's unofficial rejection of unsupervised parenting time and the Parole Board's advice that father needed to demonstrate a longer period of compliance with the conditions of parole before it would consider unsupervised parenting time. The judge explained she would defer to the Parole Board regarding father's request to modify the PSL conditions because she did "not find it appropriate . . . to address or remove th[e] condition of parole, especially in light of the fact that there [wa]s a question as to whether [father] ha[d] been compliant with all of his conditions for a period of time."

The judge entered a March 4, 2025 order terminating the litigation and denying father's motion to modify his parole conditions. In the order, the judge wrote: "[Father] continues to have [PSL] due to a prior criminal sentence and shall continue to be supervised around [Julia] until a modification is made by [the] Parole [Board]."

On appeal, father argues the Family Part judge erred in denying modification of his parole conditions to allow him unsupervised parenting time with Julia without a plenary hearing. He further claims the Family Part judge had jurisdiction to determine whether he could have unsupervised parenting time with Julia under the best interests of the child test. Additionally, father asserts

the judge's termination of the litigation was contrary to J.C. Mother joins in father's arguments. We reject these arguments.

Our review of a trial judge's interpretation of a statute is de novo. Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019) (citing State v. Fuqua, 234 N.J. 583, 591 (2018)). "A court normally ascribes to the statute's words their 'generally accepted meaning,' and construes them 'in context with related provisions so as to give sense to the legislation as a whole.'" Ibid. (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 514-15 (2018)) (citation omitted). We also "interpret a regulation in the same manner that we would interpret a statute." US Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012) (citing Bedford v. Riello, 195 N.J. 210, 221-22 (2008)).

We first address father's argument the judge erred in finding she lacked jurisdiction to modify his conditions of parole and should have conducted a plenary hearing before deciding the issue.

Article VI, Section III, Paragraph 2 of the New Jersey Constitution assigned "original general jurisdiction throughout the State in all causes" to the Superior Court of New Jersey. However, when "the Legislature has vested exclusive jurisdiction with an agency, . . . a court's original jurisdiction over the subject matter" is preempted. Smerling v. Harrah's Ent., Inc., 389 N.J. Super.

181, 187 (App. Div. 2006). "[J]urisdiction of an administrative agency may be said to be exclusive when the remedy which the agency is empowered to grant is the only available remedy for the given situation." In re Hoboken Tchrs.' Ass'n, 147 N.J. Super. 240, 248 (App. Div. 1977).

Because the Superior Court of New Jersey has "original general jurisdiction throughout the State in all causes," absent the Legislature vesting exclusive jurisdiction in the Parole Board, father argues the Family Part judge had jurisdiction to modify his PSL conditions.

As relevant here, N.J.A.C. 10A:72-2.6(a) provides:

> In the case of an offender sentenced to . . . [PSL] and the offense committed by the offender involved a minor child, the offender may not initiate, establish, or maintain unsupervised contact with a minor child unless approved by the [d]istrict [p]arole [s]upervisor or designee or by the appropriate court.

Father asserts this regulation does not exclusively empower the Parole Board to approve unsupervised visitation with minors because it also refers to approval of such a request "by the appropriate court." Father argues the Family Part was "the appropriate court" to modify his parole conditions and allow unsupervised contact with his daughter.

Father misstates the judge's conclusion on this issue. The judge did not state she lacked jurisdiction to address father's motion. Rather, the judge found

11

it was inappropriate to address the father's PSL conditions because the Parole Board explained father had not been compliant with his parole conditions. The judge found the Parole Board required father to demonstrate at least six months of compliance with the conditions of his parole before it would consider allowing unsupervised parenting time with Julia. The judge merely deferred to the Parole Board regarding father's future compliance with the conditions of his parole before considering father's request for unsupervised parenting time.

Father cites the Family Part's "parens patriae responsibility to protect the welfare of children" as evidence that the Family Part is "the appropriate court" to hear his parole modification request. In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999) (citing In re Guardianship of J.C., 129 N.J. 1, 10 (1992)). Father asserts the Family Part's obligation to protect the welfare of children implies it is "the appropriate court" to modify his parole conditions to allow unsupervised parenting time with Julia.

Father failed to cite a single regulation designating the Family Part as "the appropriate court" to modify conditions of parole associated with a previous criminal conviction. Nor did father cite any case law establishing the Family Part as "the appropriate court" under such circumstances.

Courts defer to the Parole Board regarding parole-related requests because of "its expertise in the specialized area of parole supervision." J.I. v. N.J. State Parole Bd., 228 N.J. 204, 230 (2017) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). The Family Part's expertise governing the welfare of a child is separate from regulations governing the Parole Board's exercise of its authority related to the conditions of parole.

Even if we agreed the Family Part was "the appropriate court" to decide father's request to modify the conditions of his parole, which we do not, father argues the judge impermissibly abdicated the Family Part's obligation regarding the best interests of the child by deferring to the Parole Board's recommendations. Father contends the judge's deference to the Parole Board "short-circuited the essential function of the court to consider [Julia]'s best interest."

The judge did not abdicate her responsibilities. Rather, she deferred to the Parole Board because there was a "question as to whether [father] ha[d] been compliant with all of his [parole] conditions for a period of time." The judge noted the Parole Board handled parole matters and wanted the Parole Board's input before rendering a decision regarding Julia's best interests.

Father and mother also argue N.J.S.A. 9:2-4.1 confers jurisdiction to judges in the Family Part to consider modification of parole conditions. The statute provides in part:

> Notwithstanding any provision of law to the contrary, a person convicted of sexual contact . . . or endangering the welfare of a child . . . shall not be awarded the custody of or visitation rights to any minor child, except upon a showing by clear and convincing evidence that it is in the best interest of the child for such custody or visitation rights to be awarded.
>
> [N.J.S.A. 9:2-4.1(b).]

Father and mother assert father satisfied the statute's "clear and convincing evidence" standard to warrant consideration of father's motion for unsupervised parenting time and modification of father's PSL conditions. Father and mother note the Parole Board does not consider the best interests of the child and, therefore, contend the Family Part is best suited to address father's PSL restrictions under the best interests of the child test.

Contrary to father's argument, nothing in N.J.S.A. 9:2-4.1 addresses parole conditions and the Family Part's ability to modify such restrictions, even where the parole conditions involve minors. If father's restrictions are modified by the Parole Board, the Family Part would be able to address father's request

for unsupervised parenting time under N.J.S.A. 9:2-4.1(b), focusing on Julia's best interests.

Here, the judge merely required father to resolve his parole conditions with the Parole Board as the agency specializing in addressing modification of the conditions of parole. On these facts, the judge did not err in denying father's motion and deferring to the Parole Board.

We next address father's argument that the judge erred in denying his request for a plenary hearing. Denial of a plenary hearing "is reviewed for abuse of discretion, with deference to the expertise of Family Part judges." Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (citing Hand v. Hand, 391 N.J. Super. 102, 111-12 (App. Div. 2007)). When the matter involves the welfare of a child, the movant must "show there is a genuine and substantial factual dispute regarding the welfare of the children" warranting a plenary hearing. Hand, 391 N.J. Super. at 105 (citing Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)).

Father argues his September 2024 evaluation by Dr. Yeoman supported unsupervised contact with Julia warranting a plenary hearing. He asserts the information in Dr. Yeoman's evaluation and his PSL conditions created a factual dispute regarding Julia's best interest. Father claims his PSL conditions should

15                                                                      A-2384-24

have been evaluated by way of a plenary hearing. If the judge had held a plenary hearing, father argues the Division and Julia would have been able to submit evidence as to why unsupervised parenting time was not in Julia's best interest and cross-examine Dr. Yeoman regarding his opinions in the September 2024 evaluation.

Father does not deny he is subject to PSL conditions prohibiting contact with minors. He also concedes the Parole Board informally considered Dr. Yeoman's September 2024 evaluation. After reviewing the evaluation, the Parole Board explained it would not consider modifying father's PSL conditions until he demonstrated a longer period of parole compliance.

There are no disputed facts warranting a plenary hearing in this case. Father's parole conditions and his compliance with those conditions are first reviewed by the Parole Board. The Family Part may consider unsupervised parenting time and the best interest of the child after the Parole Board modifies father's parole conditions.

We turn to father's argument the judge erred in terminating the litigation despite the continuing restraints imposed on his exercise of unsupervised parenting time. We disagree.

Father argues the termination of the litigation without addressing his parenting time restrictions "left [him] unrepresented while the restraints on his parenting time with his own daughter endured." Father and mother assert the judge's order terminating the litigation was contrary to the New Jersey Supreme Court's ruling in J.C., which prevents "the Division's continued involvement with the family without the requisite judicial oversight." 257 N.J. at 465-66. Father contends the judge left the case "open administratively with the Division" as further support for his argument that the judge should not have terminated the litigation. However, nothing in the judge's March 4, 2025 order terminating the litigation stated the case would remain administratively open with the Division.

In J.C., the Court addressed "whether a family court judge may dismiss an action for the care and supervision of children brought pursuant to [Title 30] but continue restraints on a parent's conduct." Id. at 455. J.C. involved a Title 30 action against a child's mother where the trial court found "the children were not benefiting from the Division's involvement and the court was satisfied that there were no additional services the Division could provide to assist" the mother and, as a result, the trial court "dismissed the litigation with restraints" imposed on the mother. Id. at 459. The Court held "the Division's continued involvement with the family without the requisite judicial oversight" was "inconsistent with

17

the express provisions of [Title 30]." Id. at 465-66. The Court explained that "if the court finds that the Division established by a preponderance of the evidence that restraints on a parent's contact with her children is in their best interests, the case should not be dismissed." Id. at 466.

Father and mother argue the facts in this case are analogous to the facts in J.C. The parents contend the judge erred in terminating the litigation without resolving father's PSL restrictions related to unsupervised parenting time. However, J.C. is distinguishable because the judge in this matter did not impose the restraints on father's parenting time. Rather, father's PSL conditions were imposed by a criminal court judge as part of father's 2012 criminal conviction and sentence. Therefore, the judge did not violate J.C. by terminating the litigation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2384-24