# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0852-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER A. TARVER,

    Defendant-Appellant.

_____

> Submitted October 4, 2021 – Decided November 17, 2021
>
> Before Judges Fasciale and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-02-0251.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Cody T. Mason, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (David M. Liston, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury found defendant Christopher A. Tarver guilty of eight counts of second-degree endangering the welfare of a child (child endangerment), N.J.S.A. 2C:24-4(a) (counts one, two, four, seven, eight, ten, thirteen, and seventeen); as well as five counts of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (counts three, six, nine, twelve, and sixteen); four counts of second-degree official misconduct, N.J.S.A. 2C:30-2 (counts five, eleven, fourteen, and eighteen); one count of second-degree sexual assault, N.J.S.A. 2C:14-2(c) (count fifteen); one count of second-degree pattern of official misconduct, N.J.S.A. 2C:30-7 (count nineteen); and one count of third-degree possession of child pornography, N.J.S.A. 2C:24-4(b)(5)(b) (count twenty-six, renumbered count twenty at trial). The offenses arose from defendant's coaching relationship with D.Q. (Darren),[1] a then-teenaged member of a youth travel basketball team defendant coached.

Following the trial, defendant pled guilty to one count of third-degree child endangerment (count twenty-one), regarding Darren, and as to another

---

[1] We use initials and pseudonyms to preserve the confidentiality of these proceedings and to protect the privacy of the victim, family members, and witnesses. N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

A-0852-18

victim[2] B.K. (Ben), two counts of second-degree official misconduct, N.J.S.A. 2C:30-2 (counts twenty-two and twenty-three), and one count of second-degree pattern of official misconduct, N.J.S.A. 2C:30-7 (count twenty-four). In exchange for the plea, the State dismissed count twenty—third-degree possession of child pornography—and recommended defendant's plea sentence run concurrent to his trial sentence.[3]

On appeal, he argues:

POINT I

THE SECOND-DEGREE ENDANGERING CHARGES AT TRIAL VIOLATED THE EX POST FACTO PROVISIONS OF THE STATE AND FEDERAL CONSTITUTIONS AND UNFAIRLY PREJUDICED DEFENDANT SUCH THAT REVERSAL ON ALL COUNTS IS REQUIRED. (Not Raised Below).

---

[2] The charges against other victims, also members of defendant's travel youth basketball team, were severed from defendant's trial.

[3] Defendant was sentenced to an aggregate fifty-two-year prison term, with twenty-one years, nine months, and nineteen days of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, to be served at the Adult Diagnostic and Treatment Center. Additionally, an aggregate twenty-year term of imprisonment, with ten years of parole ineligibility, was imposed against defendant on the guilty pleas, running concurrent to the trial convictions.

POINT II

REVERSAL IS REQUIRED BECAUSE SUBSTANTIAL BAD-ACT EVIDENCE WAS INTRODUCED DUE TO ERRONEOUS COURT RULINGS AND THE INEFFECTIVENESS OF DEFENSE COUNSEL, AND BECAUSE INADEQUATE JURY INSTRUCTIONS WERE PROVIDED. (Partially Raised [Below]).

A. The Trial Was Improperly Overwhelmed by Evidence of Uncharged Conduct Involving Sex Acts, Drugs, and Alcohol.

B. Counsel Was Ineffective when He Elicited Details of Severed Allegations and the Court Erred in Admitting Additional Bad Act Evidence in Response.

1. Trial Counsel Was Ineffective when He Elicited Allegations Regarding Severed Charges.

2. The Court Wrongly Admitted Inflammatory Evidence Under the Opening-the-Door Doctrine.

C. The Court Erred in Admitting Additional Bad-Act Evidence.

D. The Risk of Harm Was Further Enhanced by the Failure to Instruct the Jury on How to Consider the Multiple Charges.

POINT III

THE STATE'S CASE WAS BOLSTERED BY IMPROPER "FRESH[]COMPLAINT" TESTIMONY THAT RELATED TO UNCHARGED CONDUCT AND WAS UNTIMELY, AND WHICH WAS THEN INACCURATELY PRESENTED TO SUGGEST

4

THAT IT RELATED TO THE CHARGED
OFFENSES.  (Partially Raised [Below]).

POINT IV

THE STATE'S CASE WAS IMPROPERLY
BOLSTERED BY OPINION TESTIMONY,
HEARSAY, AND OVERT EMOTIONAL APPEALS.
(Not Raised Below).

POINT V

THE CUMULATIVE EFFECT OF THE ERRORS
DEPRIVED DEFENDANT OF DUE PROCESS AND
A FAIR TRIAL AND WARRANTS REVERSAL.  (Not
Raised Below).

POINT VI

RESENTENCING IS REQUIRED BECAUSE THE 52-
YEAR SENTENCE WAS BASED ON IMPROPER
CHARGES AND A FLAWED LEGAL ANALYSIS,
AND BECAUSE THE COURT IMPROPERLY
IMPOSED A NERA SENTENCE ON COUNT 15.

We reverse and remand for retrial because the prosecution of the eight

counts of child endangerment violated the ex post facto clauses of the state and

federal constitutions and, thus, unfairly prejudiced defendant's trial as to the

remaining counts for which he was convicted.  Because defendant's post-trial

guilty pleas were the result of his convictions at jury trial that we vacate, he may

move before the trial court to have the guilty pleas withdrawn.  Due to our

remand, we address and conclude the trial court mistakenly applied its discretion

A-0852-18

in admitting testimony of: (1) Darren's girlfriend as fresh complaint evidence; (2) a substantial number of uncharged other-wrongs or bad-acts (hereinafter "bad acts") evidence of defendant giving alcohol and marijuana to an underaged Darren and engaging in sexual misconduct outside our state; (3) another alleged victim about defendant's conduct towards him regarding drug use, sex acts, and viewing his genitals; and (4) uncharged bad acts by defendant with minors other than Darren. These errors should not be repeated on retrial.

I.

Defendant's ex post facto claims—as well as other contentions discussed later—were not raised before the trial court; therefore, they must be reviewed for plain error. R. 2:10-2. Under that standard, an unchallenged error constitutes plain error if it was "of such a nature as to have been clearly capable of producing an unjust result." Ibid. "Thus, the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015).

Our "state and federal constitutions forbid the legislative branch from passing 'ex post facto' laws." State v. Natale, 184 N.J. 458, 490 (2005) (citing U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ 3). Ex post facto laws are prohibited "to assure that legislative Acts give

fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29 (1981). Consequently, "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law." Natale, 184 N.J. at 490 (quoting State v. Young, 77 N.J. 245, 253 (1978) (per curiam)). Yet, "the Ex Post Facto Clause bars retroactive judicial enlargement of a criminal statute only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" Id. at 490-91 (quoting Rogers v. Tennessee, 532 U.S. 451, 457 (2001)). "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver, 450 U.S. at 30.

A "law is retrospective if it 'appl[ies] to events occurring before its enactment' or 'if it changes the legal consequences of acts completed before its effective date.'" Riley v. N.J. State Parole Bd., 219 N.J. 270, 285 (2014) (alteration in original) (quoting Miller v. Florida, 482 U.S. 423, 430 (1987)). Nevertheless, "'[t]here is no ex post facto violation . . . if the change in the law is merely procedural and does not increase the punishment, nor change the

7

ingredients of the offence or the ultimate facts necessary to establish guilt.'" Natale, 184 N.J. at 491 (quoting Miller, 482 U.S. at 433).

Defendant's eight child endangering convictions under N.J.S.A. 2C:24-4(a) were based solely on acts he committed in 2010 and 2011 when Darren was sixteen and seventeen years old. Focusing on the application of the ex post facto clause to those convictions, we need not detail the alleged sordid acts forming the basis of the convictions. We leave specific mention of those allegations for our discussion below.

In 2010 and 2011, N.J.S.A. 2C:24-4 provided:

> a. Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and P.L.1974, c.119, s.1 (C.9:6-8.21) is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.
>
> b. (1) As used in this subsection:
>
> "Child" means any person under 16 years of age.
>
> [L. 2001, c. 291, § 1 (emphasis added).]

8

In 2013, N.J.S.A. 2C:24-4 was amended to raise the statute's protected age of victims from under sixteen years old to under eighteen years old. L. 2013, c. 51, § 13. Defendant thus argues he could not be guilty of child endangerment under the statute for conduct allegedly occurring in 2010 or 2011, when Darren was not under the age of sixteen, and any retroactive application of the 2013 amendment is contrary to the ex post facto clause of the New Jersey Constitution. We agree.

The State argues the 2013 amendment "had no effect on the charge of second-degree child endangerment because the conduct prohibited by N.J.S.A. 2C:24-4(a) already applied to children under the age of eighteen." The State explained,

> [b]y incorporating the Title 9 definition of "abused or neglected child" into the definition of second-degree child endangerment and by declining to further limit the age of the child-victim as it had done in defining third-degree child endangerment, the Legislature expressed in plain language its intent to protect any child under eighteen from abuse by any person with a legal duty or assumed responsibility for the child's care. . . . The expressly incorporated Title 9 definition of "abused or neglected child" controls the definition of second-degree child endangerment under N.J.S.A. 2C:24-4(a).

N.J.S.A. 2C:24-4(a) includes child endangering both by sexual conduct and by abuse or neglect. Contrary to the State's argument, the plain language of

N.J.S.A. 2C:24-4(a) prior to its amendment clearly established Title 9 was incorporated only as a reference to the type of "harm" to a child required to establish the offense. See State v. Demarest, 252 N.J. Super. 323, 329 (App. Div. 1991) ("Although N.J.S.A. 2C:24-4(a) incorporates the provisions of Title 9 to describe the kind of 'harm' to a child required to establish the offense, it does not refer to Title 9 to define the other elements of the offense . . . ."). In fact, both the original and amended versions of N.J.S.A. 2C:24-4(a) divide the two kinds of endangering conduct into separate sections, endangering by sexual conduct and by abuse or neglect, and only references Title 9 in the second subsection relating to endangering by abuse or neglect. The age distinction between the statute's two sections was addressed in In re R.B., 376 N.J. Super. 451, 474 (App. Div. 2005), overruled on other grounds, In re T.T., 188 N.J. 321 (2006), where we held at that time "[b]oth the Title 9 offense and the Title 2C offense are directed at the abuse and endangerment of children. [Title 2C] is only applicable to children under sixteen, while [Title 9] applies if the child is under eighteen."

The State also mistakenly relies on State v. McInerney, 428 N.J. Super. 432 (App. Div. 2012), in support of its position the statute had applied to

10

children under the age of eighteen before the amendment. In McInerney, we only mentioned the applicable age in a single sentence, stating:

> The Legislature's focus on this harm[4] is evidenced not only by the enhanced punishment but also by the fact that only those who have a legal duty or have assumed responsibility for care of the child may be convicted of endangering the welfare of a child sixteen years of age or older under N.J.S.A. 2C:24-4(a).
>
> [428 N.J. Super. at 441.]

That sentence, however, was merely dicta and made without addressing the statute's amendment increasing the protected age to under eighteen years old. In fact, after McInerney, our Supreme Court specifically acknowledged in State v. Fugua, 234 N.J. 583, 595 (2018), and In re Cohen, 220 N.J. 7, 18 (2014), the statute's amendment enhanced the protected age from under sixteen years old to eighteen years old. The State's argument is belied by the position it took in In re R.B., prior to the amendment of N.J.S.A. 2C:24-4(a), where "[t]he State concede[d] that [the statute was] not applicable because [the victims] were over sixteen." 376 N.J. Super. at 467.

---

4 Referring to "the profound effect on a child when the harm [of endangering] is inflicted by a parental figure in whom the child trusts." McInerney, 428 N.J. Super. at 441 (alteration in original) (citing State v. Galloway, 133 N.J. 631, 660-61 (1993)).

11

On the other hand, McInerney directly contradicts the State's argument that N.J.S.A. 2C:24-4(a) incorporated the Title 9 definition of "abused or neglected child," when this court determined "[t]he language of N.J.S.A. 2C:24-4(a) plainly does not incorporate the provisions of Title 9 except with respect to the 'harm that would make a child abused or neglected.'" 428 N.J. Super. at 447.

In sum, there is no question that N.J.S.A. 2C:24-4(a), prior to its 2013 amendment, defined "child" as any person under sixteen years of age. Defendant, therefore, cannot be guilty of child endangerment for acts he committed against Darren in 2010 and 2011, when Darren was sixteen and seventeen years old, respectively. Defendant's prosecution and convictions on those charges constitute plain error and are reversed.

Further, we conclude the improper charges of child endangerment substantially prejudiced defendant and deprived him of a fair trial as to the remaining charges of which he was convicted. The State presented a significant amount of inflammatory evidence, including a substantial number of uncharged bad acts to prove the other allegations against defendant. The evidence was highly prejudicial, as explained in detail later, resulting in an inherent danger "a jury may convict a defendant not for the offense charged, but for the extrinsic

offense." State v. Garrison, 228 N.J. 182, 193-94 (2017). We are convinced "the inherently prejudicial nature of [wrongs or bad acts] evidence cast[ed] doubt on [the] jury's ability to follow even the most precise limiting instruction." State v. Stevens, 115 N.J. 289, 309 (1989).

Moreover, the State's emphasis on the eight improper child endangerment offenses throughout its opening and summation causes significant concern. Our Supreme Court has recognized "[m]ultiple charges may suggest propensity for crime, and there is the possibility that proof as to one offense will enter into the consideration of another charge." State v. Manney, 26 N.J. 362, 368 (1958). The substantial testimony the State presented to prove the child endangerment allegations created a significant possibility that the evidence presented on those improper charges colored the jury's deliberation in its consideration of the remaining charges. Hence, defendant was deprived of a fair trial as to the remaining counts, and therefore, we vacate the convictions on the remaining counts as well and remand for a new trial.

## II.

In view of our vacation of all of defendant's convictions, defendant raises several other claims of error we must address to give guidance to the trial court at retrial.

A-0852-18

A.

Fresh Complaint

At a pretrial N.J.R.E. 104 hearing, D.M. (Daria), Darren's ex-girlfriend, testified that in January 2013, Darren told her about defendant's inappropriate conduct towards him during a basketball tournament in Florida. She said Darren told her that while he was "intoxicated," defendant "touched him, like [in] his crotch area," and "[came] on to [him] somehow physically with touching in inappropriate places," such as his "inner thigh or grab[bing] . . . his penis."

In ruling Daria's testimony would be admissible as fresh complaint testimony, the trial court explained:

> [A]lthough the [i]ndictment ended with allegations that took place up to a certain date, there may have been ongoing contact after the fact.
>
> It appears that . . . the relationship was ongoing. Whether it continued to be sexual or was just [through texts] at that point in January [20]13, there was still an ongoing relationship between [defendant] and [Darren], based upon . . . text messages at [the] minimum.
>
> And so, the fact that there's this relationship going on while this disclosure is being made in January or February . . . 2013, from today, it appeared more that it was January . . . 2013—there really wasn't a passage of time that would be damaging and take it out of the fresh complaint area.

14

A-0852-18

The fact that she was his girlfriend and they're lying in bed and sharing . . . what appears to be the dark side of their lives does demonstrate that . . . this was an intimate relationship.

She was a natural confidante, which is . . . also a part of the fresh complaint criteria that we look at. She is someone that he would open up to and did open up to on the date in question.

Before us, defendant contends the trial court erred in allowing Daria's testimony that Darren complained to her regarding defendant inappropriately touching him before he reported the incidents to law enforcement as fresh complaint evidence. Defendant first asserts the purported complaints concerned allegations of out-of-state conduct, with no indication when the alleged misconduct occurred to establish the complaints were timely made. He maintains the "error was . . . compounded when the court allowed the State to misrepresent the complaint" pertained to charged offenses. According to defendant, "the testimony was presented in a misleading and highly prejudicial way," and "the jury was left with the inescapable impression" that defendant had told Daria about incidents that were part of the charged offenses, when in fact it was about an uncharged offense that occurred in Florida. Finally, defendant argues "the court not only failed to limit the risk of harm, but reinforced it by providing two inaccurate and incomplete fresh[]complaint instructions."

A-0852-18

We conclude the trial court mistakenly applied its discretion in admitting Daria's testimony as a fresh complaint and thereby denied him his right to a fair trial, because there was no showing that the complaint to Daria was timely made. See State v. L.P., 352 N.J. Super. 369, 380-81 (App. Div. 2002) ("The determination whether the fresh complaint rule's conditions of admissibility have been satisfied is committed to the discretion of the trial court.") (citing State v. Hill, 121 N.J. 150, 167-68 (1990)); Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) ("[W]e will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'") (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). Under the fresh complaint rule, the State can present "evidence of a victim's complaint of sexual abuse, [which is] otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." R.K., 220 N.J. at 455. Still, "the trial court is required to charge the jury that fresh[]complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made." Id. at 456 (citing State v. Bethune, 121 N.J. 137, 147-48 (1990)).

16

"In order to qualify as fresh[]complaint evidence, the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support." Id. at 455 (citing State v. W.B., 205 N.J. 588, 616 (2011)). In determining whether a complaint was made within a reasonable time after the act(s) occurred, the lapse of time between the incident(s) and the reporting does not bar the statement if explainable by the youth of the victim and the statement's attendant circumstances, such as "being cajoled and coerced into remaining silent by their abusers." Bethune, 121 N.J. at 143. Stated differently, the reasonable time component of the fresh complaint rule must be applied flexibly "in light of the reluctance of children to report a sexual assault and their limited understanding of what was done to them." W.B., 205 N.J. at 618 (citing State v. P.H., 178 N.J. 378, 393 (2004)).

We agree with defendant that the State failed to establish that Darren's complaint to Daria that he was sexually abused by defendant was timely made to qualify as a fresh complaint. She testified that in 2013, Darren told her defendant had inappropriately touched him during an out-of-state tournament, which she believed was in Florida. The State's evidence was that Darren attended two tournaments in Florida, one in 2010 and one in 2011. The State

17

argues that based on Daria's testimony at the N.J.R.E. 104 hearing, "it can be inferred that the incident Darren disclosed was the one that occurred during the July 2011 Nike Super Showcase in Orlando, Florida, where[,] for the first time, defendant touched Darren's genitals under his boxers." But Daria, admitting her recollection was "shaky," did not know which tournament Darren was referring to. Given there was no accurate way to determine when and where the complained of incident occurred, the State did not properly establish the complaint was timely.

Even if we agree with the State that Darren was abused in July 2011 and he complained to Daria in January 2013, a year-and-a-half later, we still find under the circumstances his complaints were not timely made. In State v. Hummel, the victim was a twelve-year-old foster child when she entered the defendant's home, was fifteen years old when she left his home, and had been abused for a period of three years before making her complaint. 132 N.J. Super. 412, 418-19 (App. Div. 1975). We thus determined that a four-to-six-week delay in disclosing the abuse was reasonable. Id. at 423. In State v. Kozarski, 143 N.J. Super. 12, 16-17 (App. Div. 1976), we determined that an eleven-year-old victim's two-week delay in telling his mother about the abuse was reasonable given the natural reluctance of a young boy to divulge such information to his

18

parents. In contrast, Darren's delay in complaining was not weeks later, but was a year-and-a-half later. He was not living under defendant's roof, and he was almost entering adulthood at seventeen years old in July 2011, when the alleged incident occurred, and almost nineteen years old[5] in January 2013, when he complained to Daria.

The State's reliance on W.B. to support its argument that the lapse in time in Darren's complaints was reasonable is misplaced. In W.B., our Supreme Court determined that a delay in disclosing alleged sexual assault of approximately two years was reasonable for purposes of admitting the fresh complaint testimony based on the particular circumstances of that case. 205 N.J. at 619. The victim was fourteen years old when the defendant's abuse occurred, and sixteen when she complained to her former boyfriend. Id. at 597. She was the defendant's stepdaughter, had lived with him during the attacks and at least some of the interval of nondisclosure, and was afraid to report the abuse. Id. at 618-19.

As mentioned, Darren was not "young" at seventeen years old in July 2011, when the alleged incident occurred, and almost nineteen years old in January 2013, when he complained to Daria. Darren is not related to defendant

---

[5] He was eighteen and nine months years old.

and at no time lived with him. He was away from defendant and had ample opportunities to disclose the alleged sexual abuse. Although Darren's relationship with defendant was ongoing and, based on Darren's testimony, had started when Darren was only sixteen years old, there was no evidence that defendant threatened Darren with physical harm if he disclosed their relationship. Rather, Darren feared the possibility of being kicked off defendant's basketball team, which he acknowledged was very important to him at the time because it impacted his potential to play college basketball. Further, the "flexibility" that normally applies under the fresh complaint rule to children is not compelling here. A year-and-a-half delay was not reasonable under the circumstances because during that interval Darren stopped playing on defendant's basketball team and had reached the age of majority, and there was no evidence that Darren feared for his safety if he disclosed the alleged abuse. Since the trial court failed to point to any applicable authority supporting the conclusion that a delay of a year-and-a-half, or nine months after reaching the age of majority, was reasonable under comparable circumstances, the court mistakenly abused its discretion by admitting the fresh complaint evidence.

For the sake of completeness, we also address defendant's other fresh complaint contentions. We appreciate defendant's contention that Daria's

testimony about Darren's complaints was "highly prejudicial" because it left the jury "with the inescapable impression that Darren complained of the charged conduct" that occurred in New Jersey. Neither party, nor have we, come across any case law involving the use of fresh complaints that relate to uncharged sexual offenses. Daria's testimony, however, was not admitted for the purpose of showing that he committed the charged offense but for the "narrow purpose" to negate the inference that the abuse did not occur because of his silence. See Hill, 121 N.J. at 163. As discussed below, the trial court properly advised the jury in accordance with our guidelines of the purpose for which the testimony was presented. Hence, any confusion as to whether the fresh complaint conduct occurred in New Jersey was harmless.

Lastly, we address defendant's challenge to the instructions to the jury about how to consider fresh complaint evidence. Defendant argues "the court not only failed to limit the risk of harm [in admitting Daria's testimony] but reinforced it by providing two inaccurate and incomplete fresh[]complaint instructions." Because there was no objection to the instruction at trial, it may only be the basis for reversal if it amounted to plain error. R. 2:10-2. Plain error in a jury charge is one with the possibility to produce an unjust result "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it

21

otherwise might not have reached." State v. Jordan, 147 N.J. 409, 422 (1997) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). The charge must be read as a whole in determining whether there was any error. Ibid. (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). We conclude there was nothing in the instruction provided that could have led the jury to reach an unjust result.

New Jersey courts "have always placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury. Erroneous instructions on matters or issues material to the jurors' deliberations are presumed to be reversible error." State v. Grunow, 102 N.J. 133, 148 (1986) (citing State v. Collier, 90 N.J. 117, 122-23 (1982)). Erroneous instructions are generally considered to be "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206 (1979).

A day after Daria testified, and eight days after Darren testified regarding the disclosure to Daria, the court instructed the jury as follows:

> Now, in the case you heard testimony . . . that [sometime] after the alleged sexual offense, [Darren] complained to [Daria] about what had taken place.
>
> More particularly, there was testimony that he disclosed to her that he was sexually assaulted.
>
> The law recognizes that people might assume that anyone subjected to a sexual offense would complain

within a reasonable time to someone whom he would ordinarily turn for sympathy, protection, and advice.

If there was no evidence that [Darren] made a such a complaint, some might conclude that no sexual offense occurred.

As a result, in cases involving an allegation of sexual offenses, the State is permitted to introduce evidence of the complaint.

The only reason that the evidence . . . is permitted is to negate the inference that [Darren] failed to confide in anyone about the sexual offense. In other words, the narrow purpose of the fresh complaint rule is to allow the State to introduce such evidence to negate any inference that [Darren] failed to tell anyone about the sexual offense, and that, therefore, this later assertion could not be believed.

A fresh complaint is not evidence that the sexual offense actually occurred, or that [Darren] is credible. It merely serves to negate any inference that, because of his assumed silence, the offense did not occur.

It does not strengthen his credibility. It does not prove the underlying truth of the sexual offense.

A fresh complaint only dispels any negative inferences that might be made from his assumed silence. In determining whether a complaint was, in fact, made, you may consider all of the relevant factors in evidence.

You may consider your observations of the age and demeanor of [Darren], your evaluation of his background including his relationship, if any, . . . with the defendant, and the nature of his relationship with

23

[Daria]. And you know, that she's the person to whom that disclosure was allegedly made.

In this context, you may consider the timeliness of the complaint, and the likelihood that [Darren] would complain under the circumstances described.

If . . . there was a delay in making a complaint, you may consider whether any circumstances existed which would explain the delay.

You may consider the conduct and demeanor of [Darren] at the time of the complaint as well his physical or mental condition, including any evidence of physical injury.

You may also consider whether the complaint was volunteered by [Darren], or whether it was the result of an interrogation.

It is, of course, up to you to determine what the facts are with regard to the circumstances of the complaint, and what weight to give these facts in determining whether or not a complaint was made.

As I have indicated earlier, this testimony was for a limited purpose. The making of a complaint is not an element of the offense. Proof that a complaint was made is neither proof that the sexual offense occurred, nor proof that [Darren] was truthful.

It merely dispels any negative inference that might arise from his assumed silence. It eliminates any negative inference that his claims of having been sexually assaulted are false, because of his assumed failure to have confided in anyone about the sexual offense.

24

[(Emphasis added).]

The court provided essentially the same instruction to the jury prior to its deliberations.

While the jury charge did not perfectly follow the model jury charge,[6] and should have been provided immediately after Daria testified,[7] it sufficiently advised the jury of the limited purpose of the fresh complaint evidence to negate the inference that defendant was not sexually abused because of his silence in disclosing the abuse and not to use it to establish defendant's guilt. Considering the sum of the fresh complaint evidence instructions provided to the jury, there was no plain error as it was not clearly capable of producing an unjust result.

In sum, the trial court mistakenly applied its discretion by admitting the fresh complaint evidence because the complaint was not made within a reasonable time based on the length of the delay and Darren's age at the time of the disclosure.

---

[6] The court did not instruct the jury to consider whether the fresh complaint was "the product of suggestion," i.e., by Daria or Darren's parents, as set forth in Model Jury Charges (Criminal), "Fresh Complaint" (rev. Feb. 5, 2007).

[7] See State v. Blakney, 189 N.J. 88, 93 (2006) (noting "the better practice is to give limiting instructions not only at the time that other-crimes evidence is presented, but also in the final jury charge.").

B.

Bad Acts Evidence Involving Darren

At the same pretrial N.J.R.E. 104 hearing referenced earlier, the trial court determined uncharged claims that defendant, outside of New Jersey, provided Darren with alcohol and marijuana and engaged in sexual misconduct, were admissible as "intrinsic" evidence under State v. Rose, 206 N.J. 141 (2011) and admissible under N.J.R.E. 404(b).

In describing defendant's sexual advances towards Darren, the court reasoned:

> [I]t is intrinsic [under Rose], not just because we have . . . incidents in New Jersey and in between we have incidents out of state, but because there appeared to be more a progression in the relationship.
>
> . . . [T]he statement of facts . . . in this case, . . . it did appear that it's a relationship that's starting out.
>
> It's starting out with . . . a pat on the behind. It's . . . progressing until we have . . . the incidents described by [the prosecutor], and each time there was a contact, there was a progression in the relationship that was growing even more and more physical over the time period. And some of those incidents that were out of state were a part of this progression of the relationship.

The court also found the bad acts evidence was admissible under a <u>Cofield</u>[8] analysis.

Defendant argues the court erred by admitting a substantial and unnecessary amount—"[a]t least half the trial" evidence—of uncharged allegations of bad acts evidence that occurred outside of New Jersey and alleged acts involving minors other than Darren. He says: (1) the jury was improperly overwhelmed by the sheer volume of evidence of uncharged conduct involving sex acts, drugs, and alcohol; (2) defense counsel was ineffective when he elicited details of severed allegations and the court erred by admitting additional bad acts evidence in response; (3) the court erred by admitting additional bad acts evidence; and (4) the risk of harm was further enhanced by the failure to instruct the jury on how to consider the multiple charges.

Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." N.J.R.E. 404(b)(1). Accordingly, "[e]vidence regarding other specific acts may not be used to prove the commission of a particular act on a particular occasion, unless they establish a habit or routine practice under N.J.R.E. 406." Biunno, Weissbard & Zegas,

---

[8] <u>State v. Cofield</u>, 127 N.J. 328 (1992).

Current N.J. Rules of Evidence, cmt. 1(b) on N.J.R.E. 404 (2021). Rule 404(b) is based on "the inordinate prejudice to the defendant inherent in other-crimes evidence." State v. Hernandez, 334 N.J. Super. 264, 269 (App. Div. 2000), aff'd as mod., 170 N.J. 106 (2001). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is 'a "bad" person in general.'" Cofield, 127 N.J. at 336 (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)). "A defendant may not be convicted simply because the jury believes that he is a bad person." State v. Skinner, 218 N.J. 496, 514 (2014).

Evidence of other crimes and bad acts "may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b)(2). Thus, evidence of a prior bad act may be admissible to establish a "common scheme or plan, a signature crime, motive, and most frequently, to impeach the accused who takes the witness stand, but only through a conviction." State v. Weeks, 107 N.J. 396, 406-07 (1987). In Cofield, our Supreme Court set forth a four-pronged test to govern the admission of such evidence:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[127 N.J. at 338 (citation omitted); see also State v. Carlucci, 217 N.J. 129, 140-41 (2014) (reaffirming the Cofield test).]

Further, even if relevant under N.J.R.E. 404(b), such evidence must nevertheless survive the crucible for all relevant evidence: "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." State v. Lykes, 192 N.J. 519, 534-35 (2007) (quoting N.J.R.E. 403). The Court has also explained that Cofield's second prong "need not receive universal application in [N.J.R.E.] 404(b) disputes," and therefore need not apply where it is not relevant. State v. Williams, 190 N.J. 114, 131 (2007).

"Evidence should be barred under N.J.R.E. 403 if 'the probative value of the evidence "is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the" issues.'" State v. Santamaria, 236 N.J.

390, 406 (2019) (alteration in original) (quoting State v. Cole, 229 N.J. 430, 448 (2017) (additional internal citation omitted)). "Inflammatory evidence 'must be excluded if other probative, non-inflammatory evidence exists.'" Ibid. (quoting Green, 160 N.J. at 500). "The party urging the exclusion of evidence under N.J.R.E. 403 retains the burden 'to convince the court that the N.J.R.E. 403 considerations should control.'" Ibid. (quoting Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001)). But see State v. Reddish, 181 N.J. 553, 608-09 (2004) ("[U]nder N.J.R.E. 404(b), the party seeking to admit other-crimes evidence bears the burden of establishing that the probative value of the evidence is not outweighed by its apparent prejudice.").

Before a court determines whether a prior bad act is admissible for a particular purpose, it should first determine whether the evidence relates to a prior bad act or whether it is intrinsic to the charged offense. State v. Brockington, 439 N.J. Super. 311, 325 (App. Div. 2015) (quoting Rose, 206 N.J. at 179). Evidence that is intrinsic to the charged offense, while needing to satisfy the rules relating to relevancy and undue prejudice, "is exempt from the strictures of Rule 404(b)[.]" Rose, 206 N.J. at 177.

Intrinsic evidence is limited to two categories: (1) evidence that "directly proves the charged offense"; and (2) evidence that, when "performed

contemporaneously with the charged crime," facilitates "the commission of the charged crime." Brockington, 439 N.J. Super. at 327-28 (quoting Rose, 206 N.J. at 180) (internal quotation marks omitted). As to the second category of intrinsic evidence, the temporal proximity between the uncharged bad act and the indicted crime must be contemporaneous, not simply "close in time[,]" and the link between the same must be "meaningful." Brockington, 439 N.J. Super. at 338 (Fisher, J., dissenting) (citations omitted).

Furthermore, "other crimes evidence may be admissible if offered for any non-propensity purpose, [including] the need 'to provide necessary background information' about the relationships among the players as a proper purpose." Rose, 206 N.J. at 181 (alteration in original) (emphasis omitted) (quoting United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010)). Such background evidence is admissible "outside the framework of [N.J.R.E.] 404(b)," and when admissible for that purpose, the evidence was subject to the probative value/prejudice balancing test under N.J.R.E. 403, not prong four of N.J.R.E. 404(b). Id. at 177-78, 181 (quoting Green, 617 F.3d at 249). The Rose Court further explained:

> There is no need to regard [N.J.R.E.] 404(b) as containing an exhaustive list of the non-propensity purposes permitted of other crime evidence. . . . [T]here is no reason that our courts cannot allow, under

[N.J.R.E.] 404(b), evidence to be admitted for . . . necessary background or, as otherwise stated, the need to avoid confusing the jury, non-propensity purpose.

[Ibid. (quotation omitted).]

Once N.J.R.E. 404(b) evidence is found to be admissible, "the court must instruct the jury on the limited use of the evidence." Cofield, 127 N.J. at 340-41. "[T]he court's instruction 'should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Id. at 341 (quoting State v. Stevens, 115 N.J. 289, 304 (1989)). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is 'a "bad" person in general.'" Id. at 336 (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)).

We conclude the trial court mistakenly applied its discretion in admitting a voluminous amount of evidence of uncharged claims related to defendant giving alcohol and marijuana to an underaged Darren and engaging in sexual misconduct outside our state. As the court found, such evidence helped the State demonstrate defendant's plan and intent to groom Darren, as well as the "progression" of their inappropriate relationship. But it was not needed "to

32

provide necessary background information" about the relationship, as the Court held in Rose. 206 N.J. at 180-81. The evidence presented to support the charged sex abuse against Darren in New Jersey served the same purpose. Thus, the admission of the additional alleged uncharged bad acts evidence that occurred outside New Jersey or involved minors other than Darren was not necessary. Such evidence was inherently inflammatory as it had the probable capacity to divert the jurors' minds from a reasonable and fair evaluation of whether defendant was guilty of the charged offenses. Indeed, there was more than enough probative admissible evidence available to the State, e.g., the text messages between Darren and defendant and Darren's testimony about the abuse that occurred in New Jersey, to prove the charged offenses.

We understand the State's contention that the uncharged, out-of-state bad acts evidence was intrinsic evidence under Rose and admissible under an N.J.R.E. 404(b) analysis. Charges that defendant endangered Darren's welfare by providing him with alcohol and drugs were supported by evidence that defendant provided him with alcohol and drugs outside of New Jersey and had some probative value because it demonstrated defendant's plan and intent to groom him and the progression of their inappropriate relationship. Nevertheless, the evidence amounted to unnecessary piling on of bad acts that

33

was overwhelming and likely diverted the jury's attention from the charged offenses. In turn, the evidence had a strong tendency to cause the jury to believe defendant had a propensity to commit crimes and compounded his lack of decency beyond the charged offenses. Hence, the volume of other bad acts evidence was less probative of defendant's guilt and too prejudicial to his defense.

On remand, should the State seek to admit evidence of other bad acts occurring outside New Jersey as intrinsic evidence, the trial court shall conduct a Rule 104 hearing with the intent to limit such evidence to a minimum for the reasons articulated in this opinion.

## C.

### Ineffective Assistance of Counsel/Opening the Door

Defendant was also indicted on two counts of second-degree official misconduct, N.J.S.A. 2C:30-2 (counts twenty-two and twenty-three), against Ben. According to defendant, his trial counsel improperly elicited testimony during the cross-examination and re-cross of Ben, a State witness, about the charges concerning him that were severed from defendant's trial and unrelated to the charged offenses involving Darren.

Defendant points to trial counsel's cross-examination of Ben, asking him why he left the Middlesex County College basketball team coached by defendant, to which Ben replied, "[defendant] made it impossible to play for him," because of the things defendant said to and texted him. In reply to counsel's questions about the complaints he made to the college about defendant, Ben said he showed college officials "text messages that [defendant] sent to me about asking to eat my ass out, offering to give me the golden shower, offering me $1,000 to show him my balls, you know, all that type of stuff." Ben testified that no action was taken against defendant as a result of his complaints.

Defendant claims the questioning "served no strategic purpose, [and] irreparably prejudiced [him]" because "the [trial] court . . . permitted the State to introduce additional evidence about Ben's allegations, and other claims, under the 'opening-the-door' doctrine." Yet, defendant contends the court's "opening-the-door" ruling "was erroneous, aggravated the ineffective assistance of counsel, and provides a separate ground for reversal."

We first discuss defendant's ineffective assistance of counsel claim. To establish a prima facie case of ineffective assistance of counsel, a defendant "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." State v. Fritz, 105 N.J. 42, 52 (1987)

(quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).  Ineffective assistance claims are more appropriately raised on a petition for post-conviction relief instead of direct appeal.  State v. McQuaid, 147 N.J. 464, 484 (1997).  Thus, we generally do not entertain them on direct appeal because they normally require examination of evidence outside the trial record.  State v. Preciose, 129 N.J. 451, 460 (1992).  Yet, since defendant's ineffective assistance arguments are related to the arguments in which we have rejected above, there is no need to examine evidence outside the record for their resolution.  Considering defendant's ineffective assistance claims, we conclude they lack merit.

When reviewing such claims of ineffectiveness, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.  "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ."  Fritz, 105 N.J. at 54 (citation omitted); see also State v. Echols, 199 N.J. 344, 357-59 (2009).  "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt."  State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall 123 N.J. 1, 165

(1991)).  "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'"  Id. at 314-15 (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).

Because we view defendant's questioning as trial strategy, counsel did not provide ineffective assistance.  That said, even accepting defense counsel's strategy was unsound and his performance deficient, defendant has not demonstrated he was prejudiced by the questioning of Ben and that a different result would have occurred without it, because there was evidence of defendant's guilt through Darren's testimony and numerous text messages between Darren and defendant.  Accordingly, defendant failed to demonstrate he received ineffective assistance of counsel under the Strickland test.

On the other hand, we agree with defendant's contention that the trial court erred in finding the defense's questioning of Ben opened the door for a full discussion of Ben's allegations that were severed from defendant's trial concerning Darren's allegations.  The doctrine of "opening the door" is a "rule of expanded relevancy" whereby irrelevant or inadmissible evidence may sometimes be admitted if the "opposing party has made unfair prejudicial use of

37

related evidence." State v. James, 144 N.J. 538, 554 (1996). In criminal cases, the doctrine "operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context." Ibid. Nonetheless, the doctrine "has its limitations," and "evidence is still subject to exclusion where a court finds the probative value of the otherwise inadmissible responsive evidence 'is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury . . . .'" Ibid. (quoting N.J.R.E. 403). See also State v. Prall, 231 N.J. 567, 583 (2018) ("[E]ven if defense counsel did 'open the door' . . . the probative value of that testimony would nevertheless need to outweigh its apparent prejudice to be admissible."). Thus, "[t]he doctrine of opening the door can be used only to prevent prejudice; it cannot be subverted into a rule for injection of prejudice." James, 144 N.J. at 562 (quoting United States v. Winston, 447 F.2d 1236, 1240 (D.C. Cir. 1971)).

The court mistakenly applied its discretion by permitting Ben to testify and identify text messages about defendant's conduct towards him regarding drug use, sex acts, allowing defendant to see his genitals, the ending of his basketball career, and reporting defendant's conduct to law enforcement, on the

basis that defendant opened the door. The cross-examination of Ben did not elicit testimony related to his severed claims, nor did it benefit the defense or undermine the State's case. Had the court scrutinized the testimony under the lens of N.J.R.E. 403 or a Cofield analysis, it should have found the testimony inadmissible. Any probative value of Ben's testimony—such as to rebut defendant's suggestion that Darren's claims were fabricated—was substantially outweighed by the prejudice to defendant due to its inflammatory nature and its tendency to show a propensity to commit the charged offenses.

D.

Bad Acts Evidence Not Involving Darren

During the trial, the State presented evidence—not the subject of a Rule 104 hearing—of uncharged bad acts by defendant with minors other than Darren. Defendant provided alcohol or marijuana to other travel basketball team players during: a 2010 college trip, a 2010 Mets game, three basketball tournaments in Orlando, Florida, two baseball games, a trip to Darren's boarding school, other basketball tournaments, and around the time of Darren's high school graduation. There was also testimony about defendant interacting with Darren's friends, including a message in which defendant said one of them talked about giving defendant oral sex. Additionally, Darren's parents testified that

defendant was drinking with two travel team players in 2010.  Defendant did not object to the admission of the testimony, and now contends it was plain error for trial court to allow the jury to hear it.  He argues that "[t]his evidence . . . served no legitimate purpose and was clearly capable of prejudicing [him], particularly given the lack of appropriate jury instructions."  We agree.

This testimony was not directly related to any of the charged offenses and was not necessary to prove the charges, nor was it intrinsic to the charges.  Applying the Cofield analysis, the testimony should have been excluded under its first prong because it was not relevant to a material issue at trial, and its fourth prong because its prejudicial effect far outweighed the non-existent probative value of the evidence.  See 127 N.J. at 338.

Yet, even if the testimony was considered intrinsic evidence as the State argues, it should have been excluded under N.J.R.E. 403 because the probative value was substantially outweighed by the potential prejudice to defendant based on the volume of evidence admitted.  See Santamaria, 236 N.J. at 410 (finding even if evidence is found to be intrinsic to the crime at issue, it is still subject to the limits of N.J.R.E. 403).  The testimony shined a negative light on defendant, demonstrating he had a disregard for common decency, especially given the conduct involved minors.  Moreover, as noted above, there was sufficient

evidence directly related to the charged offenses against Darren that occurred in New Jersey, such that the testimony was not relevant nor necessary to prove defendant guilty.

E.

Jury Instruction on How to Consider Multiple Charges

Defendant contends for the first time on appeal that given the twenty counts the jury had to consider, the trial court failed to instruct the jury on the Model Jury Charges (Criminal), "Criminal Final Charge" (rev. May 12, 2014). The charge provides:

> There are [(the number)] offenses charged in the indictment. They are separate offenses by separate counts in the indictment. In your determination of whether the State has proven the defendant guilty of the crimes charged in the indictment beyond a reasonable doubt, the defendant is entitled to have each count considered separately by the evidence which is relevant and material to that particular charge based on the law as I will give it to you.
>
> [Ibid.]

Defendant also contends the court did not comply with State v. Pitts, 116 N.J. 580, 603 (1989), where the Court held that although the trial court properly "cautioned the jurors to deliberate separately on each of the twelve counts, and to return a judgment of conviction only if convinced that each element of the

41

individual counts had been proved beyond a reasonable doubt," it would have been preferable, when multiple counts (twelve) are joined in a single indictment, for the trial court to "have emphasized" to the jury its "duty to avoid any negative or prejudicial impressions that might otherwise be created by the joinder of several criminal charges in a single indictment." Pitts, 116 N.J. at 603.

It would have been preferable for the court to instruct the jury on the model charge to stress the jury's duty to avoid the impression that defendant had a propensity to commit crime due to the numerous charges. See Manney, 26 N.J. at 368 ("Multiple charges may suggest propensity for crime, and there is the possibility that proof as to one offense will enter into the consideration of another charge."). We, however, do not conclude plain error occurred.

We agree with the State that the trial court gave proper guidance to the jury through the following instruction: "As you know, the defendant is charged with other criminal offenses. The State alleges that these other offenses constitute the basis for the charge of official misconduct. You must consider each charge separately, based on the evidence produced in support of that charge." Considering the jury instructions in its entirety, the jury was clearly informed that it should consider each charge individually. See Fischer v. Canario, 143 N.J. 235, 254 (1996) (finding no reversible error "where the

42

charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury.").

F.

Opinion and Hearsay Testimony

Defendant contends for the first time on appeal that the State elicited improper hearsay and opinion testimony about Darren's alleged disclosures, his parents' suspicions, and the emotional toll on their family. Thus, reversal of his convictions is warranted.

Defendant protests the following as improper hearsay testimony:

> Darren testified that he disclosed the alleged abuse to a private investigator and his lawyers in 2013, despite being "nervous" and "hesitant" to do so, because he wanted "to make sure that what had happened to me didn't happen to anyone else." . . . [His father] also testified that Darren disclosed during part of his rehab treatment in which people "share with a trusted loved one" "bad things" that happened to them while "using," stating: "he stood up and said, 'Dad, I was abused,' and he broke down crying and I held him." . . . Lastly, [his mother] testified that Darren explained his refusal to discuss [defendant] in 2012 by stating: "[Y]ou don't know what he's like. You don't know what his job really is. You don't know what he can do to you. You don't know what he can hold over you. You'll lose your job. . . . [H]e's got dirt on you."

The testimony, defendant claims, "unfairly bolstered the State's case." Defendant says the improper testimony was exacerbated by the prosecutor's

43

A-0852-18

misconduct in emphasizing the improper hearsay testimony and making emotional appeals to the jury at closing.

There was no plain error in the court permitting the jury to hear this testimony. Darren's testimony about disclosing the abuse to the private investigator and his lawyer was not hearsay because Darren was the declarant. See N.J.R.E. 801(c). Also, his mother's statements were not hearsay because they were not offered for their truth. Rather, they were offered to help explain why Darren did not disclose to his mother when she confronted him. See ibid. In contrast, his father's testimony was hearsay because it was offered to establish defendant had sexually abused Darren. Nevertheless, we see no unjust result considering Darren's testimony that defendant abused him and the text message exchanges between them.

As for improper opinion testimony, defendant cites Darren's parents' testimony that: he had an intimate and creepy relationship with Darren; they shared their concerns about him to numerous people, including the police; he made them feel sick and that trusting him was the "worst decision" of their lives; and that he was "predator," and that Darren was "brave" and their "hero" for coming forward to help "other little boys" after having spent "a third of his life" in defendant's "grip."

We conclude the parents' testimony about Darren and defendant's relationship was lay opinion testimony because they had no personal knowledge of whether Darren was actually sexually assaulted by defendant. Their belief was not based on their perception because they never actually saw defendant inappropriately touch Darren. See N.J.R.E. 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); N.J.R.E. 701 (a non-expert witness may give testimony "in the form of opinions or inferences" as long as it "is rationally based on the witness' perception" and "will assist in understanding the witness' testimony or determining a fact in issue."). Additionally, their testimony was not relevant as it did not prove defendant's guilt or innocence. See N.J.R.E. 401 ("'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action.").

Furthermore, there was improper lay opinion testimony explaining why Darren delayed in disclosing the alleged sexual assault, that defendant was a "predator," and how defendant harmed their family. The testimony was an improper attempt to appeal to the emotions and sympathy of the jury. It "shift[ed] the jury's attention from the evidence and produce[d] a verdict fueled

A-0852-18

by emotion rather than a dispassionate analysis of the evidence." State v. Black, 380 N.J. Super. 581, 595 (App. Div. 2005).

Nonetheless, as with the hearsay testimony, we see no unjust result. There was sufficient evidence of defendant's abuse through Darren's testimony and the text message exchanges between them.

Turning to the prosecutor's closing remarks, defendant contends they "were inappropriate, fed into the improper opinion and hearsay testimony, and made it more likely that the jury would be unduly affected." Defendant did not object at trial. Therefore, plain error applies.

We only reverse a conviction where the prosecutor's misconduct is so egregious that it deprived the defendant of a fair trial. State v. Timmendequas, 161 N.J. 515, 575 (1999). The prosecutor cannot impassion a jury or incite emotions but is permitted to forcefully comment on the evidence that he or she intends to prove at trial. State v. Wakefield, 190 N.J. 397, 442 (2007); State v. Pindale, 249 N.J. Super. 266, 285 (App. Div. 1991). See also State v. Williams, 113 N.J. 393, 453 (1988) (finding that a prosecutor cannot resort to improper appeal to the jury's emotions).

Based on our conclusion that the testimony was improper, we must likewise conclude the prosecutor's closing remarks discussing the testimony

were improper. Yet, because plain error applies, we find they were not so egregious that an unjust result occurred by defendant being deprived of a fair trial.

Although we conclude that plain error did not occur through the admission of improper hearsay and opinion testimony and prosecutorial misconduct, should the State seek to present similar testimony on remand and defendant objects, the court must determine whether to allow the testimony given the rulings expressed herein.

III.

The remaining issues on appeal concern the cumulative effect of the trial court's errors and the imposition of an excessive sentence. There is no need to address them considering our ruling that defendant's convictions are vacated and that he should be allowed to move for withdrawal of his guilty pleas.

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

47                                                          A-0852-18